DORSEY & WHITNEY LLP
Jonathan Montcalm
51 West 52nd Street
New York, New York 10019
(212) 415-9200

*Attorneys for Plaintiff Rauch Industries, Inc.*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAUCH INDUSTRIES, INC., <br><br> Plaintiff, <br><br> -v- <br><br> CHRISTOPHER RADKO, and HEART ARTIST LLC, <br><br> Defendants. | Case No. |

## **COMPLAINT**

Plaintiff, Rauch Industries, Inc., ("Rauch") by its attorneys, Dorsey & Whitney LLP, states

its Complaint against defendants Christopher Radko ("Mr. Radko"), and Heart Artist LLC ("Heart

Artist," with Mr. Radko, "Defendants") as follows:

## **INTRODUCTION**

1.      This is an action for breach of contract, trademark infringement, unfair competition

and false designation of origin, and trademark dilution, all arising out of Defendants' use of the

name and mark, Christopher Radko, both of which Mr. Radko sold when he sold his company to

Rauch for millions of dollars almost 17 years ago.  Relying on its purchase of both Mr. Radko's

name and various CHRISTOPHER RADKO marks, Rauch has continued to invest millions of

dollars in developing the goodwill and reputation associated with its high-end Christopher Radko

brand Christmas ornaments. Within the last several weeks, however, Mr. Radko, together with his one-man company, Heart Artist, has re-entered the Christmas ornament business with his new venture, HeARTfully Yours, and is blatantly attempting to rebuild the very business he sold using the very same key ingredient – his name.

2.      Specifically, despite having sold all of the rights to use the CHRISTOPHER RADKO trademarks and the name Christopher Radko (including all derivations thereof) in connection with the business of designing, manufacturing and selling Christmas ornaments and related seasonal items, Defendants are unlawfully using Mr. Radko's name and the CHRISTOPHER RADKO trademarks to market, promote, advertise and sell Christmas ornaments.

3.      By trading on the very name and trademarks for which Mr. Radko already sold the rights to Rauch, Mr. Radko is not only is breaching his contractual obligations, but he, along with Heart Artist, are also violating Rauch's intellectual property rights, harming Rauch's goodwill and reputation, confusing the marketplace and Rauch's customers, causing Rauch competitive injury, undermining the value of the very business Mr. Radko sold, and creating the false perception that HeARTfully Yours is a superior, or more authentic, brand, because it is designed by Mr. Radko. These harms are irreparable in nature, and cannot be redressed by monetary damages or other remedies at law alone.

4.      To put a stop to this consistent and increasing pattern of illegal conduct, and the irreparable harm it is causing Rauch, Defendants must be preliminarily and permanently enjoined from using the Christopher Radko name or CHRISTOPHER RADKO trademarks in any way connected to, or associated with, the design, manufacture and sale of Christmas ornaments and related seasonal items, through HeARTfully Yours, or otherwise.

## PARTIES, JURISDICTION AND VENUE

5.     Rauch is a North Carolina corporation with its principal place of business and corporate headquarters at 120 Lakeside Avenue, Seattle, Washington.  Rauch designs and markets seasonal décor.  Rauch sells its products, including ornaments under the CHRISTOPHER RADKO trademarks that are known for their distinctive and high-quality designs, to leading retailers in mass merchandise, hobby/craft stores, home improvement centers, supermarkets, drug stores, department stores, specialty gift stores, holiday catalogues, and digital web-based retailers.

6.     Defendant Christopher Radko is an individual who, upon information and belief, resides in Garrison, New York.

7.     Defendant Heart Artist LLC, is a New York limited liability company formed on October 4, 2021, that, upon information and belief, has a principal place of business located at 1145 Route 9D, No. 545, Garrison, New York 10524.  Mr. Radko is the registered agent for Heart Artist and, upon information and belief, the sole member of Heart Artist.   Upon information and belief, Heart Artist is owned and operated by Mr. Radko alone, and is the purported owner of the HeARTfully Yours brand.

8.     This is a civil action arising out of Mr. Radko's breach of contract, as well as Defendants' infringement of federally registered trademarks owned and used by Rauch, in violation of §§ 32(1) and 43(a) of the U.S. Trademark Act of 1946, *as amended* (the "Lanham Act"), 15 U.S.C. §§ 1114(1), 1125(a), and the statutory and common law of the State of New York.

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00 and the parties are diverse: Plaintiff is a Washington corporation, Mr. Radko is a New York resident, and Heart Artist is a New York limited liability company whose sole member, Mr. Radko, is a New York resident. The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1338 because this action contains claims

arising under the Lanham Act. This Court has supplemental jurisdiction over related New York State law claims pursuant to 28 U.S.C. § 1367(a) because they form the same case or controversy.

10.    This Court has personal jurisdiction over Defendants pursuant to CPLR 301, because, upon information and belief, Mr. Radko resides in Putnam County, New York, and he is the sole member of Heart Artist.

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because, upon information and belief, Defendants reside in this judicial district.

## FACTUAL BACKGROUND

**Mr. Radko Creates the Christopher Radko Brand of Christmas Ornaments
and Related Holiday Items, Which Rauch Later Acquires in Full**

12.    Almost forty years ago, a Christmas tree containing over 1,000 vintage mouth-blown glass ornaments fell at Mr. Radko's family house, breaking the ornaments to bits.  Unable to replace them, Mr. Radko decided to start from scratch, and created Christopher Radko Ornaments.  He enlisted a Polish glassblower, and went to work recreating the lost heirlooms.  By 1985, Mr. Radko debuted sixty unique ornament designs, and his ornament business was officially launched.

13.    From the beginning, the ornaments designed by Mr. Radko were created in artisanal Polish factories by talented teams of artists and craftspeople.  The ornaments are hand-crafted, using methods that date back to the Renaissance era.  Each ornament is hand-painted to complete the Christopher Radko ornament.  The entire process takes weeks to complete.

14.    Over time, the business grew to encompass other lines of ornaments and additional holiday décor, such as ceramic cookie jars, magical snow globes, silky stockings and luscious tree skirts.  Upon information and belief, in its first year, Mr. Radko's business sold $25,000 worth of ornaments.  By 1997, it had sold $50 million in ornaments and related décor.

15.     For approximately twenty years, until March 2005, Mr. Radko, either himself or through Starad, Inc., a company for which he was the sole owner, owned the Christopher Radko brand and associated intellectual property, as well as other brands and trademarks that arose out of the growing business.   Through Starad, Mr. Radko designed, imported, marketed, sold and distributed seasonal and Christmas products, giftware, collectible items, table top items, clothing, home décor and related products.

16.     Christopher Radko ornaments have decorated the White House, adorned the Kennedy Center, and are part of the personal ornament collections of many celebrities.  Mr. Radko decorated the Christmas tree for then Vice-President Al Gore and his family in the Naval Observatory for eight years.   The *New York Times* once called Christopher Radko the "Czar of Christmas Present."  In 1999, Clarkson Potter published a coffee table book titled *Christopher Radko's Ornaments*.

17.     Christopher Radko ornaments are also popular among collectors.   There are currently at least sixteen groups on Facebook containing the terms "Christopher Radko" or "Radko" in their title.  Searching the term "christopher radko" on eBay yields over 17,000 results.

18.     Because he used his name as the trademark, trade name and brand for his company, and because he grew his reputation as a designer of high-end Christmas ornaments, the name Christopher Radko is indistinguishable from the Christopher Radko brand.

19.     Rauch began as a family business in 1952, selling ornamental glass balls, tree skirts, stockings and more.  It has grown into a market leader in the holiday giftware and seasonal goods industries.

20.     To help grow its business, Rauch decided to purchase Starad from Mr. Radko, and along with it the entire Christopher Radko ornament business, including all tangible and intangible

assets.

21.     The acquisition was made through a Stock Purchase Agreement dated March 9, 2005 (the "SPA"), by and among Rauch, Mr. Radko and Starad, as well as through related agreements involving these entities and others related to Mr. Radko.

22.     Through the SPA and related agreements, and in exchange for the transfer and sale of the entire Christopher Radko business, Rauch provided Mr. Radko and Starad with over $15 million in consideration, including the purchase price, the satisfaction of outstanding debts, the sale of a minority interest in Rauch, the payment of a settlement agreement, and a salary to Mr. Radko of $500,000 per year.

**The Sale to Rauch Included All Rights to Use Mr. Radko's**
**Name In Connection with the Christmas Ornaments Business**

23.     Because Mr. Radko was inextricably intertwined with the Christopher Radko brand, it was critical to Rauch that the acquisition include not only all of the tangible and intangible assets owned by Mr. Radko and/or Starad, including all trademarks and trade names, but that it also include all rights to use and control the name, Christopher Radko, and its alternatives and derivatives, in connection with operating the business of designing, manufacturing and selling Christmas ornaments and related seasonal items.

24.     Without the rights to use Mr. Radko's name in connection with the Christmas ornament business, Rauch would not have been able to operate the business or to protect the brand it was purchasing.   The SPA and related agreements therefore provided Rauch all rights to use Mr. Radko's name and all derivatives in connection with the business.

25.     Specifically as to the Purchase and Sale, the SPA provided that:

Section 2.1. Purchase and Sale. Upon the terms and subject to the satisfaction or waiver, if permissible, of all the conditions set forth herein, on the Closing Date, Seller will sell, transfer, convey, assign and deliver to Purchaser the Shares and the Seller Intangible Assets (in accordance with the terms hereof and the Intangible

Asset Transfer Agreement), and Purchaser will purchase, accept and take assignment of the Shares and Seller Intangible Assets from Seller *(**including all rights held by Seller or Company to use Seller's name** and Intangible Seller Assets)* . . . .

SPA § 2.1 (emphasis supplied).

26.     Mr. Radko is the "Seller." SPA, Recitals, § 1.2. The "Seller Intangible Assets" are the "Intangible Assets owned or licensed to [Mr. Radko] related to the Business," SPA § 3.11(a)(Q), which includes all intellectual property, trade names and internet assets. SPA § 3.11.

27.     In connection with the acquisition and the SPA, Mr. Radko also entered into an Intangible Asset Transfer Agreement (the "IATA"), dated March 9, 2005, which further explained the scope of the intangible assets Mr. Radko sold to Rauch ,as follows:

1.     <u>Assignment</u>. In consideration of the rights and benefits received by Seller under the Stock Purchase Agreement, the payment of debts of the Starlight Companies contemplated therein, and other good and valuable consideration . . . Assignors hereby assign, transfer, sell, and convey to Assignee, all of Assignors' right, title and interest throughout the world in and to the . . . ("Intangible Rights"). Such Intangible Rights shall include, but are not limited to, those described in Schedule A. ***For avoidance of doubt, the Intangible Rights shall also include any and all worldwide right to the use of the . . . names and marks "Chris," "Christopher," "Radko," "Chris Radko," "Christopher Radko," "CR," and all variants, extensions, abbreviations, misspellings, combinations, and derivatives thereof and any names or marks confusingly similar thereto, whether or not such rights are registered or perfected, where such use is in any way related to, associated with, or similar to the Business*** (as defined in the Stock Purchase Agreement).

IATA ¶ 1 (emphases supplied). The rights granted in the sentence emphasized above will be referred to herein as the "Radko Name".

28.     The SPA defines the "Business" as the "designing, manufacturing, importing, marketing, selling and distribution [of] seasonal and Christmas products, giftware, collectible items, table top items, clothing, home décor and related products." SPA, Recitals, § 1.2.

29.     In line with the above agreements, Mr. Radko also represented in the SPA that he

was transferring to Rauch:

> The assets [that] collectively constitute[d] all of the assets, tangible and intangible, necessary to operate the Business in the manner historically operated by [Mr. Radko], currently operated by [Mr. Radko] and reasonably required for the future operations of the Business by [Rauch].

SPA § 3.3(b).  These representations by Mr. Radko survive forever.  SPA § 11.1.

30.    Rauch has fully performed all of its obligations under the SPA and the IATA.

31.    Among the intangible assets sold to Rauch by Mr. Radko were multiple federally registered trademarks, including, as is relevant here:

a.   The CHRISTOPHER RADKO word mark, Registration No. 2,639,933, covering multiple classes of goods, including in International Class 028:  Toy snow globes and Christmas tree ornaments and decorations.

b.   The CHRISTOPHER RADKO word mark, Registration No. 2,002,475, covering Christmas tree ornaments and decorations in International Class 028.

c.   The RADKO word mark, Registration No. 2,006,196, covering Christmas tree ornaments and decorations in International Class 028.

32.    Each of the above federally registered trademarks were originally registered by Mr. Radko.  Assignments were recorded on behalf of Rauch in 2005, which remains the owner.  All of these federally registered trademarks have been in continuous use for more than five years since they were originally registered.  Each is therefore incontestable under 15 U.S.C. § 1064.

33.    Together with the common law trademarks associated with the Christopher Radko name, these marks are collectively referred to herein as the "RADKO Marks."  Each of the RADKO Marks covers Christmas tree ornaments and decorations.

34.    Starad became the Christopher Radko Division of Rauch, and Mr. Radko became the nominal President of that Division, at a salary of $500,000 per year.

35.     In 2007, Rauch sued Mr. Radko and others, alleging that, at the time of the sale to Rauch, Mr. Radko owned an ornament manufacturing establishment in Poland that made the vast majority of the Christopher Radko ornaments, which was not disclosed as part of the acquisition, and thus not purchased by Rauch.  That lawsuit was settled by the parties.

36.     Around August 21, 2007, Mr. Radko's association with Rauch was terminated.

**Rauch Has Grown the Christopher Radko Brand Through Continuous Use and Investment Over the Last Seventeen Years**

37.     After acquiring Starad, Rauch invested heavily in the Christopher Radko Brand, growing it significantly.  Today, the Christopher Radko brand is one of the largest, high-end brands of Christmas ornaments in the world.  It is extremely well-known, particularly in the holiday gift and collectors' markets.

38.     Rauch has continuously sold ornaments and other products under the Radko Name and RADKO Marks (and other marks) for Christmas and other occasions.  The Christopher Radko brand of holiday items has grown to be one of the most significant brands sold by Rauch.

39.     Over the past seventeen years, Rauch has invested approximately one million dollars per year advertising and promoting Christopher Radko-branded Christmas ornaments and related holiday items, all using the RADKO Marks and the Radko Name.

40.     Through use of the RADKO Marks and the Radko Name, Rauch sells the Christopher Radko brand of holiday items primarily through specialty retail stores throughout the United States and in high-end department stores such as Neiman Marcus, Dillard's, Bloomingdale's and Saks Fifth Avenue.  Christopher Radko-branded ornaments and holiday items are available at over 2,500 stores.

41.     Rauch also maintains large showrooms using the RADKO Marks to promote the Christopher Radko brand at major trade shows, where it sells ornaments and other holiday items.

42.    Each year Rauch releases a catalog to promote and sell Christopher Radko holiday ornaments and related items.   Below is the image that adorned the cover of the 2021 catalog:



43.    Rauch also promotes the Christopher Radko brand on social media, through the Twitter account "@WorldofRadko," and the Instagram account "christopherradkoco."  Rauch uses a stylized CHRISTOPHER RADKO trademark in its bios on both Twitter and Instagram, and also often uses RADKO-related hashtags in its social media posts on Twitter and Instagram, including "#christopherradko," "#radko," and "#radkoornaments."   Also, since 2009, Rauch has operated a Facebook group for collectors of Christopher Radko ornaments, called the "Christopher Radko® Collector's Group."  That group currently has over 9,000 members.

44.    Rauch also promotes and sells Christopher Radko-branded items on its website, www.christopherradko.com, which is the website for Rauch's entire Christmas ornament and holiday business derivative of the Christopher Radko brand.

45.    In addition to the Christopher Radko brand, Rauch also sells other brands that are derivative of, or otherwise connected to, the Radko Name and the RADKO Marks.

46.    For example, Rauch sells a brand of ornaments and related items under the brand "Shiny Brite."  Some of these items are branded as "Christopher Radko Presents Shiny Brite," as shown in the below example package of Christmas ornaments, which brand Rauch sells on its website, christopherradko.com, and at major department stores:



47.    Rauch also sells ornaments and related holiday items under the brand "Celebrations by Radko," as shown in the below example package of Christmas ornaments, which brand Rauch has sold on its website, and that are also available at Old Time Pottery, a retail chain in the southern United States.



48.    Since acquiring Starad, Rauch has adhered to the same design and production process that contributed to the original value and popularity of the Christopher Radko brand. More

than a year before the ornaments are presented in the catalog, a team of designers, carvers, molders and glass blowers all work together to turn a design idea into a magnificent holiday creation. The ornaments are sculpted in clay in Poland, then sent to a mold maker who creates a sand-cast model using hundreds-year old techniques. Those models are then sent to the family-owned European factories for production, which takes a full seven days to complete.

49. The Christopher Radko ornaments—which have not been designed by Mr. Radko since 2007— have a unique design and style recognized by collectors. Rauch creates additional value in the Christopher Radko brand by offering new ornaments each year, and retiring old ones, making the new ornaments valuable to collectors who understand that they will be available for a limited time.

50. A December 21, 2018 article in *The Washington Post* described collectors of Christopher Radko ornaments as "passionate," and also states that, over the years Christopher Radko ornaments sold for an average of about $50 each, but rare ones are sold for much more, including one that sold for $1,200.

51. Due to these efforts, the Radko Name and the RADKO Marks continue to be distinctive, and are uniquely associated by consumers with high-end, high quality Christmas ornaments and related items, both in the State of New York and the United States as a whole. The Radko Name and the RADKO Marks serve as a strong source identifier by virtue of their long use, extensive promotion and long history with American consumers, and are entitled to the widest scope of protection under the Lanham Act and New York common and statutory law.

52. Rauch has marketed and offered Christopher Radko-branded Christmas ornaments and seasonal items featuring the RADKO Marks and the Radko Name in interstate commerce continuously since the 2005 acquisition.

13

53.     In July 2021, Mr. Radko began describing his Instagram account, with the handle "christopher.radko," as the "OFFICIAL PAGE OF CHRISTOPHER RADKO."  This use was improper because it suggested that Mr. Radko's personal Instagram account was the official page of the Christopher Radko brand, which is owned by Rauch.

54.     Mr. Radko amplified the potential for consumer confusion by identifying himself as an "expert" on "All things Christmas & Holidays."  Mr. Radko also improperly used the hashtags "#ChristmasOrnaments" in conjunction with "#Radko" and "ChristopherRadko."

55.     These uses improperly led consumers to assume an affiliation between Mr. Radko and Rauch.  Following those Instagram posts, Rauch received messages from people expressing their belief that Mr. Radko was coming back to Rauch, evidencing actual confusion arising from Mr. Radko's use of the Radko Name and the RADKO Marks.

56.     On July 8, 2021, counsel for Rauch sent cease and desist correspondence to Mr. Radko, based on his improper and illegal conduct on Instagram.

57.     In apparent recognition of the illegal nature of his Instagram activity, following that July 8, 2021 correspondence, Mr. Radko revised his Instagram account to remove the reference to the Christopher Radko brand.

58.     On August 6, 2021, Mr. Radko responded to Rauch's cease-and-desist correspondence through counsel.  In that letter, Mr. Radko acknowledged the ongoing requirement that he refrain from using the name Christopher Radko in a manner that would violate Rauch's intellectual property rights.

59.     Mr. Radko also informed Rauch of his plans to create a new brand to be owned by a new company "which does not evoke Rauch or the Christopher Radko trademark."

60.     Several months later, Mr. Radko started a new business designing, manufacturing

and selling Christmas ornaments.

**Defendants Repeatedly Misuse the Radko Name and**
**the RADKO Marks to Promote HeARTfully Yours**

61.     In October 2021, Mr. Radko registered Heart Artist as a New York limited liability company.

62.     Also in October 2021, Heart Artist applied for two U.S. trademark registrations: (i) for the word mark "Heartfully Yours" in Class 021, covering "[h]oliday ornaments made of glass"; and (ii) the word mark "Heartfully Yours by America's Beloved Holiday Artist" in International Class 021 covering "[h]oliday ornaments made of glass, candy jars, cookie jars, serving platters"; in International Class 016 for "[h]oliday ornaments made of paper"; in International Class 020 for "[h]oliday ornaments made of resin"; in International Class 026 for "Christmas trees, wreaths, Christmas lights"; and in International Class 028 for "Decorative snow globes".  Both of these applications are awaiting examination by the USPTO.

63.     In late December 2021, Defendants launched "HeARTfully Yours," Mr. Radko's new ornament company.

64.     Because he sold and assigned all rights in the Radko Name and the RADKO Marks, neither Mr. Radko nor anyone else can use his name or any derivation thereof in connection with designing, manufacturing and selling Christmas ornaments and related seasonal and holiday products.

65.     However, since December 2021, Defendants have repeatedly and improperly used the RADKO Marks and the Radko name to promote HeARTfully Yours, repeatedly violating Rauch's contractual and intellectual property rights.

66.     The title of Mr. Radko's personal Facebook page, which has over 5,200 followers, is "Christopher Radko," which is both a Radko Name and RADKO Mark.  Every post on this

Facebook page therefore contains the Radko Name and RADKO Mark "Christopher Radko" at the top of the post.

67.     Beginning in late 2021, Defendants have consistently used Mr. Radko's Facebook page to promote HeARTfully Yours, his new Christmas ornament business, typically in connection with posting pictures of Christmas ornaments.

68.     For example, on December 18, 2021, Mr. Radko published the below post announcing his "new ornament company, HeARTfully Yours where [he] is the artist/designer. . . It's been 15 years since my last collection.  I sold my previous company and am not connected with the registered trademark 'Christopher Radko' or that company in any way."[1]



69.     On next day, Mr. Radko again posted a picture of a Christmas ornament and

---

[1]     As discussed later in this Complaint, Defendants' attempts to disclaim an affiliation with Rauch and the Christopher Radko brand exacerbate, rather than alleviate, the negative effects of Defendants' improper conduct.

directed his followers to his "new collection at 'HeARTfully Yours.'"

70.     On December 23, 2021, Mr. Radko used his Facebook page to promote the new Facebook page for HeARTfully Yours:



71.     On December 24, 2021, Mr. Radko urged his Facebook followers to join the Instagram page for HeARTfully Yours.  That same day, he posted a video promoting his first new collection in 15 years, and the HeARTfully Yours website, Instagram account, and Facebook account.

72.     After Christmas, Mr. Radko continued to use his personal Facebook page to

promote HeARTfully Yours, posting pictures of various Christmas ornaments, and directing his

followers to (and providing links to) its Instagram and Facebook pages on a near-daily basis.

73.    In total, as of the date of this Complaint, Mr. Radko's personal Facebook page

contains at least 34 individual posts that promote HeARTfully Yours in some form.

74.    Mr. Radko's activity on his personal Instagram page has been similarly illegal.  The

name of his Instagram account is "christopher.radko," which is both a Radko Name and RADKO

Mark, and therefore cannot be used in any way in connection with Christmas ornament business.

75.    On December 25, 2021, Mr. Radko published the below post on Instagram:



In this post, which includes pictures of Christmas ornaments, Mr. Radko urges his 2,810 followers

to come see the new Instagram page for HeARTfully Yours for his "first NEW ornament collection

in 15 years!"

76.    Mr. Radko made a very similar post the following week, but with a different picture

of Christmas ornaments.  He again promoted HeARTfully Yours on his personal Instagram page around January 1, 2022, providing links to the Facebook and Instagram pages for HeARTfully Yours along with a picture of himself.

77.     The Radko Name and RADKO Marks also are used prominently at the top of the HeARTfully Yours Facebook page.   The "About" section reads: "Artist/Author Mr. Christopher Radko's new European glass Christmas ornament company, HeARTfully Yours ™.  Neither Mr. Radko nor HeARTfully Yours™ are affiliated with the Christopher Radko® brand which is a registered trademark of Rauch Industries."

78.     The account has a profile photo of eight Christmas ornaments and a post using that same photo announcing the "2022 Collection."



Comments by HeARTfully Yours on that post state that "only stores that order early will be able

to get them" and that stores will have them "in the summer."

79.     Defendants also repeatedly use the Radko Name and RADKO Marks within individual Facebook posts to promote HeARTfully Yours.

80.     For example, on December 24, 2021, Defendants published the below post, which uses the Radko Name above a picture of Christmas ornaments.



81.     In later posts, Defendants continued to use the Radko Name and RADKO Marks to publicize HeARTfully Yours and Mr. Radko's alleged "return" to the Christmas ornament business.

82.     In total, as of the date of this Complaint, the HeARTfully Yours Facebook page has at least four individual posts that use the Radko Name and the RADKO Marks.

83.     Defendants also operate an Instagram account, "heartfullyyours_christmas", which has over 1,400 followers.  The bio displayed at the top of the page uses the Radko Name and the

RADKO Marks, stating: "Created by author artist Mr. Radko, Not connected with trademark brand Christopher Radko (r).  20% goes to charity. Facebook page: Heartfully Yours".

84.     Defendants also use the Radko Name and RADKO Marks within individual posts. For example, on December 24, 2021, Defendants announced HeARTfully Yours on their Instagram, stating that: "HeARTfully Yours is The only company for which Mr. Radko is making magic come alive!"

85.     In another post later that day, Defendants again used the Radko Name and RADKO Marks with a picture of Christmas ornaments.

86.     Upon information and belief, Defendants also have operated a private Facebook group titled "Christopher Radko Ornaments by THE Christopher Radko, Heartfully Yours,"  as reflected in the below screenshot.



87.     Also, since Defendants began illegally using the Radko Name and the RADKO

Marks to promote HeARTfully Yours, at least one other private Facebook group has been created that is called: "Heartfully Yours Christopher Radko Collectors." Both of these Facebook groups have names that are confusingly similar to the "Christopher Radko® Collector's Group" that Rauch has operated for the last thirteen years.

88.    Defendants' illegal activity does not stop with its general promotion of HeARTfully Yours using the Radko Name and the RADKO Marks.    Defendants also repeatedly urge their substantial social media following to contact their favorite stores to ask those to place orders for HeARTfully Yours Christmas ornaments designed by Mr. Radko.

89.    For example, on December 29, 2021, Defendants used the Radko Name and RADKO Marks in the below post, which links to the article about Mr. Radko's "return" to the Christmas ornament business:



This post also asks the reader to: "PLEASE SHARE WITH YOUR FAVORITE STORES" that

Mr. Radko has returned.

90.     On January 3, 2022, Defendants posted the below to the HeARTfully Yours Facebook page:



This post uses the Radko Name and the RADKO Marks to advertise HeARTfully Yours, and implores the reader in all capital letters to "PLEASE LET YOUR FAVORITE STORES KNOW" that Mr. Radko is "back" designing fabulous Christmas ornaments.

91.     Mr. Radko made similar posts on his personal Facebook page, such as the below from December 30, 2021:



In this post, Mr. Radko, using the Radko Name and RADKO Marks, implores his followers to: "Let your favorite STORES know, so they can place their orders for the new HeARTfully Yours™ collection."

92.    Defendants also improperly used the Radko Name and RADKO Marks to promote the debut of HeARTfully Yours at the Atlanta Market Winter 2022 trade show. HeARTfully Yours had a display set up in the corner of the showroom operated by Schauben & Co., a sales organization with a showroom in Atlanta.

93.    In the days leading up to and during that trade show, Defendants promoted the trade show appearance on Mr. Radko's personal Facebook account, and on the HeARTfully Yours Facebook and Instagram pages. These posts included pictures of Christmas ornaments, and of the HeARTfully Yours display at the trade show.

94.    As just one example, on January 6, 2022, Defendants posted the below to Mr.

Radko's personal Facebook page:



95.    Upon information and belief, at the Atlanta trade show, Defendants also improperly promoted HeARTfully Yours through an advertisement placed on elevator doors, as shown in the below photograph:



96.    Also, during the Atlanta Trade show, Mr. Radko repeatedly posted photographs to his personal Facebook page. These photographs displayed the HeARTfully Yours Christmas ornaments.   Similar posts were also made to the HeARTfully Yours Facebook and Instagram pages.

97.    Defendants have used the Radko Name and RADKO Marks on their website for HeARTfully Yours, heartfullyyours.net.  Initially, the website consisted of only the below landing page, in which Defendants used the Radko Name and the RADKO Marks as a source identifier:



26

98.    Now, the website contains content, including multiple uses of the Radko Name and RADKO Marks.  It also contains a link to the HeARTfully Yours catalog, which also repeatedly uses the Radko Name and the RADKO Marks.

**Defendants' Uses of the Radko Name and RADKO Marks to Promote HeARTfully Yours Violates Rauch's Contract and Intellectual Property Rights and Irreparably Harms Rauch**

99.    The frequency with which Defendants improperly use the Radko Name and the RADKO Marks demonstrates an intent to continue trading on his name and reputation despite having sold those rights to Rauch years ago.

100.    All of these promotional activities by Defendants on social media, the HeARTfully Yours website and at the Atlanta trade show improperly use the Radko Name, the RADKO Marks, or both, in connection with HeARTfully Yours.  Because HeARTfully Yours is in the business of designing, manufacturing and selling Christmas ornaments, each of these uses violate the SPA and the IATA, through which Mr. Radko sold all rights to use the Radko Name and RADKO Marks in connection with the business of designing, manufacturing and selling Christmas ornaments and related seasonal items.

101.    Defendants' misconduct also violates Rauch's intellectual property rights. Although Defendants have only been promoting HeARTfully Yours for a few weeks, Rauch has already learned of multiple instances of actual confusion between Rauch's Christopher Radko brand and HeARTfully Yours, of the harm to Rauch's goodwill and reputation being caused by Defendants' actions, and of competitive injury befalling Rauch.  The amount and frequency with which consumers, including many collectors of Christopher Radko ornaments, were confused, is alarming and extremely harmful to Rauch, and permanently and irreparably harms the goodwill and reputation of Rauch, and its Christopher Radko brand

102.    On December 19, 2021, Defendants posted on Mr. Radko's personal Facebook

page a picture of a Santa ornament, promoting HeARTfully Yours.  Facebook User Donna Davey Hillier commented that she loves Mr. Radko's Celestial Santa ornament, which she just received, confusing Mr. Radko and HeARTfully Yours with Christopher Radko.  Facebook user Pete R. Oehmen commented that his Christmas tree "has been adorned with Christopher Radko Santa ornaments" for 10 years.  He went on to state that "It's going to be wonderful adding more of his inspired Santa's to our celebration," clearly confusing Christopher Radko Santa ornaments with HeARTfully Yours Santa ornaments.

103.    On December 21, 2021, a Facebook user named Michele Crowhurst posted an image of a new HeARTfully Yours ornament to the Facebook group "Christopher Radko Ornaments by THE Christopher Radko, Heartfully Yours," and at least two other Facebook users commented in ways suggesting they believed that ornament to be from Christopher Radko.

104.    On December 27, 2021, a Facebook user named Carolyn Shepard responded to a post in the Rauch-operated Christopher Radko® Collector's Group celebrating finding Christopher Radko brand ornaments at Dillard's by stating: "Wait until next year and buy ones actually created by Christopher Radko!"

105.    On December 27, 2021, shortly after HeARTfully Yours was announced, a Facebook user named Kellie Parker Helms posted in the Rauch-operated Christopher Radko® Collector's Group, asking: "Would someone be so kind as to explain to me what's going on with the Radko company?"

106.    On December 29, 2021, a Facebook user named Sarah Boeck Anderson posted in the Rauch-operated Christopher Radko® Collector's Group, expressing clear confusion between HeARTfully Yours and Christopher Radko, stating: "Can someone please explain to me Heartfully Yours vs Radko?  Is it another branch of the same parent company, is Radko coming under new

ownership or is heartfully yours a completely separate company and just hired some of the old Radko artists??? I am so confused."

107.    On January 10, 2022, The Lamp Stand, a major retailer of Christopher Radko ornaments posted a picture on Facebook with Mr. Radko at the Atlanta trade show, promoting HeARTfully Yours.   Multiple Facebook users commented on that post, expressing consumer confusion:

a.    Leslie Dee commented on that post, stating: "Awesome love all Radko ornaments."

b.    Lyne Canning provided suggestions for additional Christopher Radko ornaments.

c.    Clearly referencing a Christopher Radko ornament, Pam Buchanan Arnold stated: "I LOVE his ornaments just got one for my birthday!!"

d.    Responding to a picture of HeARTfully Yours ornaments, Marcy Jones asks if they will have the signature Christopher Radko star shaped wire on top.

e.    Wanda Peavy Cumella directly associates the Christopher Radko brand with the HeARTfully Yours brand being promoted in the post by The Lamp Stand, stating: "I absolutely love Christopher Radko ornaments, they have a story to each of mine."

108.    On January 12, 2022, a retailer named Polka Dots "tagged" the Rauch-owned Instagram account, @christopherradkoco, in a post promoting HeARTfully Yours, with pictures from the Atlanta trade show, confusing Mr. Radko's new brand with an Instagram account related to the Christopher Radko brand.

109.    On January 12, 2022, a private Facebook group was created with the title: "Heartfully Yours Christopher Radko Collectors."

110.    On January 13, 2022, a consumer named Faith Patrick tagged the Rauch-owned Instagram account, @christopherradkoco, in a post containing a picture with Mr. Radko at the Atlanta trade show, confusing Mr. Radko's new brand with an Instagram account related to the Christopher Radko brand.

111.    On January 13, 2022, Callhan's of Calabash, a retailer of Christopher Radko ornaments, tagged the Rauch-owned Instagram account, @christopherradkoco, in an Instagram story promoting HeARTfully Yours, confusing Mr. Radko's new brand with an Instagram account related to the Christopher Radko brand.

112.    On January 14, 2022, a Facebook user named Erika Thery commented on a picture of an ornament in the Christopher Radko 2022 collection that had been posted in the Rauch-operated Christopher Radko® Collector's Group, stating: "So are these kockoff [*sic*] Radko's not HeARTfully Yours???"

113.    On January 14, 2022, a Facebook user named Jeanne Turner commented  on a picture of an ornament in the Christopher Radko 2022 collection that had been posted in the Rauch-operated Christopher Radko® Collector's Group, believing it to be from HeARTfully Yours, stating: "I already sent in a pre-order, including the German shepherd Christopher told me would be in his new line."

114.    On January 14, 2022, a Facebook user named Yvonne Wells posted in the Rauch-operated Christopher Radko® Collector's Group, asking if two ornaments are from "the new collection or Radko's and how can I know the difference?"  Another Facebook user named Jennifer Taylor responds to Ms. Wells that: "none of the ones in this video are from the heARTfully yours collection [] this preview is all Christopher Radko brand.  I know it gets confusing!"  Ms. Wells then responds: "Thank you.  It is confusing! Ha!"

115.    On January 14, 2022, a Facebook user named Gigi Hayes posted a picture of her new finial in the Rauch-operated Christopher Radko® Collector's Group, and stated that: "I hope Radko's new company makes finials too."

116.    On January 14, 2022, Facebook users Vicky Narde and Gigi Hayes both state in posts in the Rauch-operated Christopher Radko® Collector's Group that they did not purchase any Christopher Radko ornaments at after-Christmas sales because they were waiting for Mr. Radko's new line to come out.

117.    On January 14, 2022, Facebook user Dottie Long, responding to a thread in the Rauch-operated Christopher Radko® Collector's Group about Mr. Radko's new line, appeared to believe that HeARTfully Yours was going to be called "Radko's."  She stated: "That's beautiful and since we all call him Radko, Radko's is a great business name. . . it's his last name . . . ."

118.    On January 15, 2022, Facebook user Phil Paul posted in the Rauch-operated Christopher Radko® Collector's Group, referring to HeARTfully Yours as "Christopher Radko's new ornaments."

119.    On January 17, 2022, Facebook user Nate Yerton asks the Rauch-operated Christopher Radko® Collector's Group if anyone knows the 2022 release date for pre orders for the Christopher Radko ornaments.  Angela Graceffo Ondich responded by asking: "For the Heartfully Yours?" clearly displaying confusion.

120.    On January 22, 2022, Facebook user Gigi Hayes posts in the Rauch-operated Christopher Radko® Collector's Group that for the first time in a long time, she has purchased no Christopher Radko ornaments, just from HeARTfully Yours.  Others then agree in the comments.

121.    Rauch also experienced instances of consumer confusion at the Atlanta trade show.  Potential customers asked Rauch representatives where the "new line" of Christopher

Radko was within the Rauch display, and also asked where the "Christopher Radko" display was, when they were looking for HeARTfully Yours.

122.    The amount and frequency with which consumers, including many collectors of Christopher Radko ornaments, were confused, is alarming and extremely harmful to Rauch, and permanently and irreparably harms the goodwill and reputation of Rauch, and its Christopher Radko brand.

123.    Defendants' misconduct also creates a connection between the Radko Name and RADKO Marks, on the one hand, and HeARTfully Yours, on the other.  Once this connection has been made by consumers, the damage to Rauch cannot be undone.

124.    In addition to causing consumer confusion and improperly creating a connection between the Radko Name/RADKO Marks and HeARTfully Yours, the specific manner in which Defendants have used the Radko Name and RADKO Marks to promote HeARTfully Yours further undermines the goodwill and harms the reputation of the Christopher Radko brand.

125.    Through social media and the HeARTfully Yours website, Defendants repeatedly emphasize that Mr. Radko has not been involved with the brand bearing his name.  They accomplish this by repeatedly touting that the 2022 HeARTfully Yours collection is the first "new" collection by Mr. Radko in fifteen years, and that it is the "only" collection for which he is the designer.   Defendants also repeatedly emphasize that HeARTfully Yours marks Mr. Radko's alleged "return" to the Christmas ornament business.

126.    For example, a December 18, 2021 post on Mr. Radko's personal Facebook page contained a link to an article in *Gifts & Decorative Accessories* dated December 17, 2021 and titled "Legacy Ornament Artist Returns to Gift Industry: After 15 years, the artist Christopher Radko is once again designing Christmas ornaments, but under a new company name and charitable

mission."

127.    In that article, Mr. Radko stated that: "If you're looking for fine new art glass ornaments *actually designed by me*, fresh for this year, here they are.  It's my first new collection in 15 years."  (Emphasis supplied.)  Mr. Radko also linked to this same article on other social media platforms.

128.    As another example, on January 2, 2021, Defendants posted the below to Mr. Radko's personal Facebook page:



In this post, Mr. Radko emphasizes that his collection is "BRAND NEW, first in 15 years."

129.    In total, and across all four social media accounts on which Defendants have

promoted HeARTfully Yours, there are no less than 9 references to Mr. Radko designing his first collection in 15 years.

130.    Rauch purchased the entire Christopher Radko business, including the Radko Name and RADKO Marks in part so that it could benefit from Mr. Radko's reputation in connection with all things Christmas.  Obtaining these rights was critical to Rauch's acquisition so that it could grow the business and protect against the very harm now being caused by Defendants.  Rauch has invested millions of dollars in the Christopher Radko brand, and has continued the intricate and labor-intensive design and manufacturing process for Christopher Radko-brand ornaments to maintain the high quality and craftsmanship expected by consumers and collectors of the Christopher Radko family of products.

131.    By highlighting the fact that Mr. Radko has not designed a new ornament collection in fifteen years, and that HeARTfully Yours is the "new" and "only" collection associate with Mr. Radko, Defendants are implying that the Christopher Radko-brand ornaments sold by Rauch are somehow inferior or less authentic than the HeARTfully Yours ornaments because they were not designed by Mr. Radko himself.  This conduct irreparably damages the reputation of, and the consumer goodwill associated with, the Christopher Radko brand that was built over forty years.

132.    By using the Radko Name and RADKO Marks name to promote a new, unaffiliated collection of Christmas ornaments, and highlighting Mr. Radko's absence from the industry, Defendants, in a very short period of time, already have created confusion among the consuming public as to which ornaments are the "real" Christopher Radko ornaments.  Defendants' actions are also improper because they are trading on the significant value and goodwill that Rauch has built in the Christopher Radko brand; and they are doing so using the very RADKO Marks and Radko Name that Mr. Radko sold to Rauch.

133.    For similar reasons, Defendants' attempts to disclaim an affiliation between HeARTfully Yours and Rauch further unfairly compete with Rauch, and violate its trademark rights. Far from dispelling confusion or competitive injury, these purported disclaimers exacerbate the negative effects of Defendants' illegal conduct.

134.    Throughout their social media accounts and company website, Defendants attempt to distinguish HeARTfully Yours from the Christopher Radko brand and from Rauch.

135.    For example, Mr. Radko's personal Facebook page states in the "Intro" section that he has "No connection to Christopher Radko®". The HeARTfully Yours Facebook page states in the "About" section that it is "Not related to registered brand Christopher Radko®." The HeARTfully Yours Instagram account states in the bio: "Not connected with trademark brand Christopher Radko (r)". Many of Defendants' posts on their social media accounts and those of Mr. Radko contain similar language.

136.    These disclaimers involve multiple uses of the Radko Name and the RADKO Marks with HeARTfully Yours. As Rauch has seen illustrated by multiple instances of consumer confusion, these disclaimers do not dispel confusion, but instead underscore a connection between HeARTfully Yours and the Radko Name/RADKO Marks, harming the strength of Rauch's Christopher Radko brand. This is the exact type of connection that Rauch bargained to avoid by purchasing the Radko Name and the RADKO Marks.

137.    The disclaimers are also misleading because they only attempt to distinguish HeARTfully Yours from the registered trademark CHRISTOPHER RADKO®, but say nothing about the Radko Name or the registered trademark RADKO®, which Rauch also owns.

138.    Many of Defendants' disclaimers are even more harmful because they are followed by the claims that HeARTfully Yours represents Mr. Radko's first new collection in fifteen years,

and that HeARTfully Yours is the only collection designed by Mr. Radko.

139.    For example, below is the disclaimer that is printed at the bottom of the 2022 HeARTfully Yours catalog, available at the HeARTfully Yours website:

> DISCLAIMER:  Neither artist Mr. Radko nor HeARTfully Yours™ is in any way associated with the trademarked registered brand Christopher Radko® which is owned by Rauch Industries.  HeARTfully Yours™ is Mr. Radko's first, and only, design collection in 15 years.

140.    These disclaimers have already harmed, and will continue to harm, Rauch's goodwill and reputation, because they imply that the HeARTfully Yours ornaments are more authentic or genuine because they are the only ornaments designed by Mr. Radko in the last fifteen years.

141.    Defendants' unfair competition does not end there. Many of the "new" HeARTfully Yours designs are clearly derivative of designs that Mr. Radko sold to Rauch.  Upon information and belief, Mr. Radko is mining old designs that he no longer owns, making slight modifications, and re-selling them for HeARTfully Yours.

142.    By way of illustration, below are multiple examples of images of retired Christopher Radko-brand ornaments on the left (owned by Rauch), juxtaposed on the right with extremely similar "new" designs for HeARTfully Yours:



| Christopher Radko – Retired | HeARTfully Yours – New |
|---|---|



143.    Also, upon information and belief, Mr. Radko is now using the ornament supplier in Poland that he allegedly failed to disclose to Rauch at the time of the sale, like he is the Radko Name and the RADKO Marks, to re-form his new ornament business.

144.    Defendants' conduct suggests that they are attempting to re-create the very business that Mr. Radko sold to Rauch: to build an "artist-driven" business entirely associated with and based upon Mr. Radko, and in the process directly, irreparably, and permanently damage the Christopher Radko brand Mr. Radko sold to Rauch.

145.    Defendants improperly seek to get loyal Christopher Radko customers to follow and buy ornaments from the "real" Mr. Radko, and they are already succeeding in ways Rauch cannot undo.  But Mr. Radko sold that business and the Radko Name and RADKO Marks to Rauch. Defendants' conduct is having, and will continue to have, the effect of diminishing the value of what Rauch purchased from Mr. Radko—and that Rauch grew substantially—and transferring that value to Mr. Radko and his new venture.

146.    The effects of Defendants' improper conduct are already becoming apparent in the marketplace.  One website, oldworldaccents.net, is offering HeARTfully Yours ornaments for pre-sale.  The title of the page where those ornaments are available for pre-order is: "HeARTfully Yours™ by Mr. Christopher Radko", as shown below:



147.    The HeARTfully Yours page on Old World Accents can be accessed through a pull-down menu on the homepage for "European Ornaments."  As shown in the below screenshot, the first entry on that pull-down menu is "HeARTfully Yours™ by Mr. Christopher Radko," and the very next entry is "Christopher Radko Ornaments," which are those sold by Rauch.



148.     Another website, traviscollisdesigns.com, is also offering HeARTfully Yours pre-orders.  The HeARTfully Yours page contains the same improper statements made by Defendants in promoting HeARTfully Yours, as shown below:



149.   On another website, thelampstand.com, HeARTfully Yours is the first brand available from the "Shop by Category" pull-down menu.  The URL for the HeARTfully Yours page is "thelampstand.com/heartfully-yours-by-mr-christopher-radko./"   This provides another example of how Defendants' improper activities in directly marketing the connection between Mr. Radko and HeARTfully Yours will confuse consumers into thinking that Rauch's Christopher Radko brand is associated with HeARTfully Yours.

150.   A retailer's Instagram account, Old World Accents, has repeatedly used the hashtag "#christopherradko" in connection with HeARTfully Yours products.

151.   Defendants' misleading activities have already caused and will continue to cause competitive and commercial injury to Rauch.

152.   For example, at least six orders with Rauch were canceled at Atlanta trade show because those customers wanted to purchase HeARTfully Yours instead.  Employees for Rauch were informed by these customers that they were cancelling their orders with Rauch because Mr. Radko's name was associated with HeARTfully Yours.  Those buyers were afraid that their customers will be confused or will not be able to distinguish between HeARTfully Yours and the Christopher Radko brand.

153.   These six cancelled orders, all from repeat customers, are just the orders about which Rauch is currently aware.  Upon information and belief, there also were customers who did not place an order at all with Rauch because of Defendants' improper conduct.

154.   Upon information and belief, Rauch will continue to lose sales to HeARTfully Yours because Mr. Radko is impermissibly using the Radko Name to promote HeARTfully Yours.

155.   The above examples of consumer confusion also illustrate how Defendants' conduct has caused, and will continue to cause, irreparable harm and damage to Rauch's federal

and common law trademark rights and Rauch's business, reputation and goodwill.

156.    Rauch has no adequate remedy at law including because the harm caused by Defendants' misconduct to Rauch's Christopher Radko brand is irreparable.  Rauch has already incurred significant damage to its reputation and goodwill, which is impossible to quantify.

### FIRST CAUSE OF ACTION
**Breach of Contract**
**(Against Mr. Radko)**

157.    Rauch repeats and realleges the foregoing paragraphs of the Complaint as if fully set forth herein.

158.    Rauch fully performed its obligations under the SPA and all related agreements including but not limited to the IATA.   These agreements are valid and enforceable as between Rauch and Mr. Radko.

159.    The SPA is governed by North Carolina law.  SPA § 13.9.  The IATA is governed by New York law.  IATA ¶ 5.

160.    Section 13.9 of the SPA provides that: "In the event of any litigation or arbitration between the parties arising out of or relating to this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party all costs incurred and reasonable attorney' fees[.]"

161.    Under the SPA, Mr. Radko agreed to sell "all rights held by Seller . . . to use Seller's name . . ."  SPA ¶ 2.1  Under the IATA, Mr. Radko also sold to Rauch "any and all worldwide right to use . . . the names and marks 'Chris,' 'Christopher,' 'Radko,' 'Chris Radko,' 'Christopher Radko,' 'CR,' and all variants, extensions, abbreviations, misspellings, combinations and derivatives thereof . . . where such use is in any way related to, associated with, or similar to the Business . . . ." IATA ¶ 1.

162.    The SPA defines the "Business" as the "designing, manufacturing, importing, marketing, selling and distribution [of] seasonal and Christmas products, giftware, collectible

items, table top items, clothing, home décor and related products." SPA, Recitals, ¶ 1.2.

163.    Through these two agreements, therefore, Mr. Radko sold Rauch all rights to use the Radko Name in any way related to the design, manufacture, and sale of Christmas ornaments and related seasonal items.

164.    Beginning in December 2021, and occurring continuously ever since, Mr. Radko has repeatedly breached these obligations, including by using the Radko Name and RADKO marks to promote his new Christmas ornament business, HeARTfully Yours.

165.    As a direct and proximate result of Mr. Radko's breaches of the SPA and IATA, Rauch has been injured in numerous ways, including by loss of sales, loss of market share and misappropriation of its goodwill. Rauch is entitled to an injunction and judgment against Defendant for damages in an amount to be determined at trial, including attorneys' fees and costs.

<u>SECOND CAUSE OF ACTION</u>
**Federal Trademark Infringement Under 15 U.S.C. § 1114**
**(Against both Defendants)**

166.    Rauch repeats and realleges the foregoing paragraphs of the Complaint as if fully set forth herein.

167.    Rauch owns the distinctive, valid and registered RADKO Marks, all which cover Christmas ornaments and related holiday items.

168.    Without Rauch's consent, Defendants have used the RADKO Marks in commerce in connection with the HeARTfully Yours to Christmas ornament collection to advertise and promote such competing products.

169.    Defendants' actions have caused and are likely to cause confusion, mistake, and deception among consumers as to the affiliation, connection, or association of Defendants with Rauch, as to the true source of Defendants' products, as to the true source of Rauch's products, and as to the sponsorship or approval of Defendants or their products by Rauch.

170.    Rauch does not approve or sponsor Defendants, their products, or the marketing in U.S. commerce of Defendants' products by Defendants.

171.    Defendants are directly liable for the infringing use of the RADKO Marks.

172.    The actions of Defendants described above constitute trademark infringement in violation of 15 U.S.C. § 1114(1).

173.    Defendants' actions are willful and reflect an intent to confuse consumers and profit from the goodwill and consumer recognition associated with the RADKO Marks, all of which is owned by Rauch.

174.    Rauch has been, and will continue to be, damaged and irreparably harmed by Defendants' actions, which will continue unless Defendants are enjoined by this Court.  Rauch is therefore entitled to injunctive relief under 15 U.S.C. § 1116.

175.    Rauch is also entitled to actual monetary damages in an amount to be determined at trial, and to any profits made by Defendants in connection with their infringing activities now and forever.

176.    Defendants' infringement of the registered RADKO Marks is deliberate, willful, and without extenuating circumstances, and constitutes a knowing use of the RADKO Marks. Defendants' infringement is thus an "exceptional case" within the meaning of section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). Rauch is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action, as well as prejudgment interest.

### THIRD CAUSE OF ACTION
**Federal Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(a)**
**(Against Both Defendants)**

177.    Rauch repeats and realleges the foregoing paragraphs of the Complaint as if fully set forth herein.

178.    Rauch owns the famous, distinctive, valid, and registered RADKO Marks, as well as common law rights in the RADKO Marks, as used in connection with Christmas ornaments and related holiday items.

179.    Without Rauch's consent, Defendants have used the RADKO Marks in commerce in connection with the HeARTfully Yours Christmas ornament collection to advertise and promote such competing products.

180.    Defendants' actions have caused and are likely to cause confusion, mistake, and deception among consumers as to the affiliation, connection, or association of Defendants with Rauch, as to the true source of Defendants' products, as to the true source of Rauch's products, and as to the sponsorship or approval of Defendants or their products by Rauch.

181.    Rauch does not approve or sponsor Defendants, their products, or the marketing in U.S. commerce of Defendants' products by Defendants.

182.    Defendants are directly liable for the use of the RADKO Marks, about which Defendants have received notification from Rauch.

183.    The actions of Defendants described above constitute unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a)(1).

184.    Defendants' actions are willful and reflect an intent to confuse consumers and profit from the goodwill and consumer recognition associated with Rauch and the RADKO Marks.

185.    Rauch has been, and will continue to be, damaged and irreparably harmed by the actions of Defendants, which will continue unless Defendants are enjoined by this Court. Rauch is therefore entitled to injunctive relief under 15 U.S.C. § 1116.

186.    Rauch is also entitled to actual monetary damages in an amount to be determined at trial and to any profits made by Defendants in connection with their unfairly competitive

activities.

187.    Defendants' unfair competition and false designation of origin are deliberate, willful, and without extenuating circumstances. Defendants' conduct is thus an "exceptional case" within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). Rauch is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action, as well as prejudgment interest.

## FOURTH CAUSE OF ACTION
### Common Law Trademark Infringement, Unfair Competition and Passing Off
### (Against Both Defendants)

188.    Rauch repeats and realleges the foregoing paragraphs of the Complaint as if fully set forth herein.

189.    Rauch owns common law trademark rights in the RADKO Marks and all such rights owned by Rauch are superior to any rights that the Defendants may claim to have in the RADKO Marks with respect to any Christmas ornaments or related seasonal items.

190.    Defendant's unauthorized use of the RADKO Marks in connection with marketing and promoting their HeARTfully Yours Christmas ornament collection and company is likely to cause confusion as to the source or sponsorship of these goods, and is likely to lead the public to believe that Rauch is affiliated with or sponsors or endorses Defendants and/or Defendants' products, and is likely to mislead persons in the ordinary course of purchasing Defendants' products, thereby injuring the reputation and goodwill and unjustly diverting from Rauch to Defendants the benefits arising therefrom.

191.    Defendants' unlawful activities, as alleged above, constitute trademark infringement, unfair competition, and passing off as proscribed by common law.

192.    Defendants' acts of trademark infringement, unfair competition, and passing off

were committed, or will imminently be committed, willfully, knowingly, intentionally, and in bad faith.

193.    Defendants' acts or intended acts of trademark infringement, unfair competition, and passing off, unless enjoined by this Court, will threaten to cause Rauch irreparable damage, loss, and injury for which Rauch has no adequate remedy at law. Rauch is therefore entitled to injunctive relief enjoining such wrongful conduct, and to an award of damages that provides Rauch with adequate compensation for the harm it has suffered.

**FIFTH CAUSE OF ACTION**
**Trademark Dilution Under New York General Business Law § 360-1**
**(Against Both Defendants)**

194.    Rauch repeats and realleges the foregoing paragraphs of the Complaint as if fully set forth herein.

195.    The RADKO Marks are distinctive within the State of New York and have been for many years prior to the first offering of any products by Defendants using the RADKO Marks.

196.    Without authorization or license from Rauch, Defendants are using and intend to use the RADKO Marks in the State of New York in a manner that impairs the distinctive quality, and harms the reputation, of Rauch's distinctive RADKO Marks.

197.    The acts and conduct of Defendants alleged herein occurred after the RADKO Marks became distinctive within the State of New York and constitute dilution by blurring and dilution by tarnishment in violation of New York General Business Law § 360-1.

198.    Defendants' acts and conduct will cause immediate and irreparable injury to Rauch, to its goodwill and reputation, and to the public, and will continue to threaten such injury unless enjoined by this Court.  Rauch is therefore entitled to injunctive relief in New York under General Business Law § 360-1.

## PRAYER FOR RELIEF

WHEREFORE, Rauch respectfully requests the following relief:

(a)      That Rauch be granted preliminary and permanent injunctive relief under U.S.C. §1051 *et seq.* and New York law specifically requiring that Defendants and all of its assigns and successors in interest, and all other persons acting in concert or participation with them, or any of them, be preliminarily and permanently enjoined from: (i) using the RADKO Marks or the Radko Name, or any confusingly similar variations thereof, in connection with the designing, manufacturing, marketing, promotion, advertising, sale or rendering of any Christmas ornaments or related seasonal items, (ii) using any false designation of origin or any false description that can, or is likely to, mislead the public, or individual members thereof, to believe that any product designed, manufactured, distributed, sold, offered for sale, or advertised by Defendants is in any manner associated with or approved or sponsored by Rauch; (iii) representing in any manner that Defendants are endorsed or sponsored by Rauch, or represent or work on behalf of Rauch, or are affiliated or associated with Rauch; and (iv) any other infringing or misleading conduct discovered during the course of this action;

(b)      That Defendants file with the Court, within ten (10) days from entry of the aforementioned injunction, a declaration signed under penalty of perjury certifying the manner in which Defendants have complied with the terms of the injunction;

(c)      That Defendants are adjudged to have breached the SPA and the IATA by using the Radko Name and the RADKO Marks to promote HeARTfully Yours;

(d)      That Defendants are adjudged to have violated 15 U.S.C. § 1114(1) by infringing the RADKO Marks;

(e)      That Defendants are adjudged to have violated 15 U.S.C. § 1125(a)(1) for unfairly

competing against Rauch and by using a false designation of origin for Defendants' products;

(f)    That Defendants are adjudged to have engaged in illegal acts of common law trademark infringement, unfair competition, and passing off;

(g)    That Defendants are adjudged to have violated New York General Business Law § 360-1 by diluting the RADKO Marks;

(h)    That Rauch be declared the prevailing party and awarded prevailing party attorneys' fees in accordance with Section 13.9 of the SPA;

(i)    That Rauch be awarded damages in an amount sufficient to compensate it for the harm caused by Defendants' acts now and in the future;

(j)    That this Court order an accounting of Defendants' profits earned as a result of Defendants' unlawful activities and disgorge all of said profits to Rauch;

(k)    That Rauch be awarded three times Defendants' profits and three times Rauch's damages suffered as a result of Defendants' willful, intentional, and deliberate acts in violation of the Lanham Act and New York law;

(l)    That Rauch be awarded its attorneys' fees and costs in this action under 15 U.S.C. § 1117 as a result of Defendants' Lanham Act violations;

(m)    That Rauch be granted prejudgment and post-judgment interest; and

(n)    That Rauch be granted such further relief as the Court may deem just and equitable.


Dated:   New York, New York                DORSEY & WHITNEY LLP

February 2, 2022                By:   _s/ Jonathan Montcalm_____

51 West 52nd Street
New York, NY 10019
(212) 415-9200
montcalm.jonathan@dorsey.com

Gregory S. Tamkin
(*pro hac vice* forthcoming)

1400 Wewatta Street, Suite 400
Denver, CO 80202
(303) 629-3400
tamkin.greg@dorsey.com

*Attorneys for Plaintiff Rauch Industries,
Inc.*