```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___3/14/2022___
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAUCH INDUSTRIES, INC.,

                        Plaintiff,

            -against-

CHRISTOPHER RADKO, and HEART
ARTIST LLC,

                        Defendants.

1:22-cv-00909-MKV

OPINION AND ORDER DENYING
MOTION FOR PRELIMINARY
INJUNCTION

MARY KAY VYSKOCIL, United States District Judge:

        Plaintiff Rauch Industries, Inc. brings this action against Defendants Heart Artist LLC

and Christopher Radko, the founder of Heart Artist LLC, for (1) Breach of Contract, (2) federal

Trademark Infringement, (3) federal Unfair Competition and False Designation of Origin, (4)

common law Trademark Infringement, Unfair Competition and Passing Off, and (5) Trademark

Dilution Under New York General Business Law § 360-1.  (Compl. [ECF No. 1]).  Along with

its Complaint, Plaintiff moved the Court, by Order to Show Cause, for Preliminary Injunctive

Relief.  [ECF No. 7].

        In support of its Motion for Preliminary Injunction, Plaintiff filed a memorandum of law,

(Pl. Br. [ECF No. 11]), the Declaration of Heather Shepardson, Rauch's CEO, with several

exhibits attached, (Shepardson Decl. [ECF No. 8]), the Declaration of Carina Wayman, Rauch's

Marketing Manager, (Wayman Decl. [ECF No. 9]), and the Declaration of John Dolan, Rauch's

Vice President of Sales and Marketing, (Dolan Decl. [ECF No. 10]).  In opposition to Plaintiff's

Motion, Defendants filed a memorandum of law, (Def. Opp'n [ECF No. 39]), and the

Declaration of Christopher Radko, (Radko Decl. [ECF No. 38]).  Plaintiff filed a reply, (Pl.

Reply [ECF No. 46]), and a reply affidavit of Heather Shepardson, (Shepardson Reply Aff. [ECF

No. 47]).

By joint letter dated February 23, 2022, the parties advised the Court that they intended to proceed on the documentary record submitted in support of and in opposition to Plaintiff's Motion for a Preliminary Injunction and did not require an evidentiary hearing.  [ECF No. 53]. The Court heard oral argument on March 2, 2022.  For the following reasons, Plaintiff's Motion for a Preliminary Injunction is DENIED.

## BACKGROUND

### I.   Plaintiff Acquires Mr. Radko's Brand

Plaintiff is a corporation that designs and markets seasonal décor, including Christmas ornaments.  (Compl. ¶ 5; Shepardson Decl. ¶ 2).  It is undisputed that Plaintiff acquired Christopher Radko's ornament business for more than $15 million through a Stock Purchase Agreement dated March 9, 2005 (the "SPA").  (Shepardson Decl. ¶¶ 12–13, Ex. A (the "SPA"); Radko Decl. ¶ 3, Ex. A).  Section 2.1 of the SPA provides:

> Purchase and Sale.  Upon the terms and subject to the satisfaction or waiver, if permissible, of all the conditions set forth herein, on the Closing Date, Seller will sell, transfer, convey, assign and deliver to Purchaser the Shares and the Seller Intangible Assets (in accordance with the terms hereof and the Intangible Asset Transfer Agreement), and Purchaser will purchase, accept and take assignment of the Shares and Seller Intangible Assets from Seller (*including all rights held by Seller or Company to use Seller's name and Intangible Seller Assets*) free and clear of all Encumbrances
>
>                                    .  .  .
>
> Upon consummation of the transactions contemplated herein, Purchaser will have acquired good, valid, marketable and exclusive title in and to the Shares, the Seller Intangible Assets and the Assets free and clear of all Encumbrances.

(SPA § 2.1 (emphasis added)).  Mr. Radko is the "Seller" under the SPA.  (SPA, Recitals, § 1.2.).  "Seller Intangible Assets" is defined as "the Intangible Assets owned or licensed to seller related to the Business."  (SPA § 3.11(a)(Q)).  "Intangible Assets" is defined as

"collectively all Intellectual Property, Internet Assets, and Trade Names," (SPA § 3.11(a)(O)), which are respectively defined as (1) "Patents, Trademarks, Copyrights and mask works, Trade Secrets, Proprietary Information, Business Information, and Know-How, and any other similar proprietary rights," (SPA § 3.11(a)(J)); (2) "all Domain Names, Web Sites and User Data," (SPA § 3.11(a)(M)); and (3) any name to identify a business, including, without limitation, fictitious names, (SPA § 3.11(a)(N)).

In connection with the acquisition and the SPA, Mr. Radko also entered into an Intangible Asset Transfer Agreement (the "IATA"), also dated March 9, 2005.  (Shepardson Decl. ¶ 19, Ex. B (the "IATA"); Radko Decl. ¶ 3, Ex. B).  Per the terms of the IATA, Mr. Radko assigned to Rauch certain interests and rights.  The relevant section of the IATA provides:

> Assignment.  In consideration of the rights and benefits received by Seller under the Stock Purchase Agreement, the payment of debts of the Starlight Companies contemplated therein, and other good and valuable consideration . . . *Assignors hereby assign, transfer, sell, and convey to Assignee, all of Assignors' right, title and interest throughout the world in and to the Seller Intangible Assets and the Starlight Intangible Assets* . . .  Such Intangible Rights shall include, but are not limited to, those described in Schedule A.  *For avoidance of doubt, the Intangible Rights shall also include any and all worldwide right to the use of the . . . names and marks "Chris," "Christopher," "Radko," "Chris Radko," "Christopher Radko," "CR,"* and all variants, extensions, abbreviations, misspellings, combinations, and derivatives thereof and any names or marks confusingly similar thereto, whether or not such rights are registered or perfected, where such use is in any way related to, associated with, or similar to the Business (as defined in the Stock Purchase Agreement).

(IATA ¶ 1 (emphasis added)).  Sellers Intangible Assets is defined in accordance with the SPA.  (IATA at 1).

Simultaneous with the SPA and IATA, the parties also entered into an Employment and Non-Competition Agreement (the "2005 ENCA").  (Radko Decl. ¶ 3; Ex. C ("2005 ENCA")).  Pursuant to that agreement, Mr. Radko was employed by Rauch post-acquisition, (Radko Decl.

¶ 7), and agreed not to compete with Rauch's business.  He also agreed not to use his name or permit others to use his name in connection with seasonal decorations until four years after the end of his employment with Rauch.  (2005 ENCA ¶ 11(c)).  The 2005 ENCA and IATA were explicitly incorporated into the SPA, which conditioned the parties' obligations under the SPA on the signing of the 2005 ENCA and the IATA.  (SPA §§ 8.1(f), (h), 8.2(b)).

After working for Rauch for several years, Mr. Radko left Rauch's employ in 2007. (Radko Decl. ¶ 7).

## II.     The 2007 Federal Lawsuit and the 2010 Settlement Agreement

Subsequent to the termination of Mr. Radko's employ with Rauch, Rauch sued Mr. Radko in the U.S. District Court for the Western District of North Carolina for breach of contract, breach of fiduciary duty, and fraud (among others), alleging that Mr. Radko caused Rauch to enter into transactions with a supplier with which Mr. Radko had an undisclosed financial interest.  Complaint, Dkt. No. 1, *Rauch Indus., Inc. v. Radko*, No. 3:07-CV-197-C, (W.D.N.C. May. 10, 2007).[1]  After about a year of litigation, Rauch filed a Second Amended Complaint, in which it reiterated the original allegations, but also alleged that Mr. Radko, along with a company he controlled, had infringed on Rauch's CHRISTOPHER RADKO trademark to solicit Rauch's customers.  Second Amended Complaint, Dkt. No. 89, *Rauch Indus., Inc. v. Radko*, No. 3:07-CV-197-C, (W.D.N.C. Aug. 29, 2008) ¶¶ 60–72, 151–59.  Mr. Radko filed counterclaims against Rauch, asserting that Rauch had committed fraud with respect to Rauch's purchase of Mr. Radko's business in 2005 and that Rauch also breached the agreements — the SPA, IATA, and 2005 ENCA — the parties had entered into in 2005.  Christopher Radko's

---

[1] Neither side made any mention of or reference to this litigation in their briefing on this motion or during oral argument.  However, the 2010 Settlement Agreement, which was disclosed and made part of the record by Defendants, specifically references the litigation.  Nonetheless, the Court may take judicial notice of public documents or matters of public record.  *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018).

Counterclaim And Answer To Second Amended Complaint, Dkt. No. 96, *Rauch Indus., Inc. v. Radko*, No. 3:07-CV-197-C, (W.D.N.C. Aug. 29, 2008) ¶¶ 229–334.

To resolve that litigation, the parties entered into a settlement agreement that superseded the 2005 ENCA (the "2010 Settlement Agreement").  (Radko Decl. ¶ 9; Def. Opp'n Ex. E (the "2010 Settlement Agreement")); *see also* Consent Decree, Dkt. No. 211, *Rauch Indus., Inc. v. Radko*, No. 3:07-CV-197-C, (W.D.N.C. Nov. 1, 2010).[2]  Under Section 4(a) of the 2010 Settlement Agreement,

> *RADKO agrees* that, *due to the unique and significant degree to which Rauch's business and good will is tied into and associated with the name of Radko*, such that Rauch's business and good will would be significantly damaged if Radko were to compete with the business of Rauch, from the Effective Date ***until August 15, 2021*** (the period from the Effective Date through August 15, 2021 is the "Non-compete Period") *RADKO*, including his successors, assigns, heirs, and estate, covenants and agrees that he *shall not*, working alone or in conjunction with one or more other persons or entities, for compensation or not, *permit his name to be used by* or engage in or carry on, directly or indirectly, either for himself . . . [or other parties other than Rauch] . . . [in] any business engaged in the designing, manufacturing, importing, marketing, selling or distributing of "Christmas Decorations" . . . or "Ornaments" . . . anywhere in the world.

(2010 Settlement Agreement ¶ 4(a) (emphasis added)).[3]  The 2010 Settlement Agreement further expressly states that "[t]o the extent any surviving provisions of the [IATA], the [2005 ENCA], and/or the SPA are inconsistent with the provisions of [paragraph 4 of the 2010 Settlement Agreement], then [paragraph 4 of the 2010 Settlement Agreement] shall control."  (2010 Settlement Agreement ¶ 4(h)).

---

[2] The 2010 Settlement Agreement also reflects that there was a New York State lawsuit filed by Rauch against Mr. Radko seeking documents.  (2010 Settlement Agreement).  The details of this suit have not been put on the record by the parties.

[3] This is the same language employed by the parties in the 2005 ENCA, with the exception that the limitation in the 2005 ENCA expired "four (4) years after Termination of [Mr. Radko's] employment with [Rauch]."  (2005 ENCA ¶ 11(c)).

### III.    Heartfully Yours

By its express terms, the limitation in the 2010 Settlement Agreement on the use of Mr.

Radko's name or his engagement in the Christmas décor and ornament business expired on

August 15, 2021.  (2010 Settlement Agreement ¶ 4(a)).  After that date, Mr. Radko started a new

business, Heart Artist LLC, engaged in the design, manufacture and sale of Christmas

ornaments.  (Radko Decl. ¶¶ 16–17).  Mr. Radko applied for two U.S. trademarks for "Heartfully

Yours," the name of this new venture.  (Shepardson Decl. ¶¶ 56–57; Radko Decl. ¶ 18).  Mr.

Radko then launched Heartfully Yours.  (Shepardson Decl. ¶ 58; Radko Decl. ¶ 16).

### IV.    Plaintiff's Motion

Plaintiff has once again sued, complaining of Mr. Radko's use of his name in connection

with his newly formed business venture.  (*See* Compl.).  Plaintiff moved for a preliminary

injunction relying on the SPA and IATA pursuant to which Rauch alleges Mr. Radko had sold

the use of his name in connection with the sale of Christmas ornaments to Rauch.  (Pl. Br. 16).

Plaintiff seeks an order enjoining Defendants, during the pendency of this action, from using: (a)

the names "Christoper Radko," "Mr. Radko," "Christopher," "Radko," or any variations thereof,

and (b) Rauch's trademarks CHRISTOPHER RADKO, RADKO, or any variations thereof, in

connection with the sale of Christmas ornaments.  (Plaintiff's Proposed Order To Show Cause

For Preliminary Injunction [ECF No. 6] at 1).

## DISCUSSION

To receive a preliminary injunction, a plaintiff must show (1) "a likelihood of success on

the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for

litigation and a balance of hardships tipping decidedly in the movant's favor;" and (2) a

likelihood of "irreparable injury in the absence of an injunction."  *Kelly v. Honeywell Int'l, Inc.*,

933 F.3d 173, 183 (2d Cir. 2019) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559

F.3d 110, 116 (2d Cir. 2009)); *see also Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (per curiam) (alteration in original) (emphasis in original) (internal quotation marks omitted).  In opposing Rauch's motion for injunctive relief, Defendants contest solely whether Plaintiff has demonstrated a likelihood of success on the merits.  (*See* Def. Opp'n 4–30).

## I.    Plaintiff Has Not Established A Likelihood Of Success On Its Breach Of Contract Claim

Plaintiff's central argument in support of its motion is that Mr. Radko's promotion of Heartfully Yours is a violation of the terms of the SPA and IATA because those agreements transferred the rights to use the RADKO Marks *and* the Radko name in connection with the Christmas ornament business.  (Pl. Br. 15).  In advancing this argument, Plaintiff makes no reference whatsoever to the prior litigation between the parties or to the 2010 Settlement Agreement.  Plaintiff wholly failed to put that highly relevant agreement before the Court, notwithstanding that it directly addresses Mr. Radko's right to use his own name after August 15, 2021.

In *Madrigal Audio Laboratories, Inc. v. Cello, Ltd.*, 799 F.2d 814 (2d Cir.1986), the Second Circuit examined the right of a person to use his own name in business after licensing his name to another corporation for use as part of a trade name.  The Court made clear in *Madrigal* that although a person can sell the right to use his name, "a court will not bar him from using that name unless his intention to convey an exclusive right *to the use of [his] own name* is clearly shown."  *Id.* at 822 (internal quotation marks omitted) (emphasis added).  "When an individual

sells no more than the right to use his name as a trade name or trademark he is precluded only from using his personal name as part of that of another company or on other products . . . *and not from taking advantage of his individual reputation*." *Id.* at 823 (internal quotation marks omitted) (emphasis added); *see also Steelite Int'l U.S.A., Inc. v. McManus*, No. 21-CV-2645 (LAK), 2021 WL 1648025, at *7 (S.D.N.Y. Apr. 27, 2021).

On the record before the Court, Plaintiff has not shown a likelihood of success on its claim that Mr. Radko clearly conveyed an exclusive right to the use of his own name in connection with any business selling Christmas ornaments and décor. Instead, based on the undisputed record, both the SPA and IATA merely transfer to Plaintiff the rights to use Mr. Radko's name *as a trademark*. Both agreements specifically refer to the transfer of the rights in Mr. Radko's name as *included in* the transfer of "Seller Intangible Assets," (*see* SPA § 2.1; IATA ¶ 1), which, as defined in the SPA, encompasses the transfer of Plaintiff's name purely as a trade name or trademark, (*see* SPA §§ 3.11(a)(Q), (O), (J), (N)). Nowhere in either agreement does it state that Mr. Radko is assigning the rights to the use of his name *personally*.

Conversely, the 2010 Settlement Agreement, which expressly supersedes the SPA and IATA to the extent there is any conflict between the agreements, (2010 Settlement Agreement ¶ 4(h)), arguably does contemplate the transfer of the right to use Mr. Radko's name personally. In the 2010 Settlement Agreement, the parties expressly recognize that Mr. Radko's personal name is so tied to the good will and business of Rauch that the parties agreed to limit personal use of his name for a limited period of time. (2010 Settlement Agreement ¶ 4(a)). Specifically, Mr. Radko agreed that "until August 15, 2021 . . . [he would not] permit his name to be used . . . for himself . . . [in] any business engaged in the designing, manufacturing, importing, marketing, selling or distributing of 'Christmas Decorations' . . . or 'Ornaments.'" (2010 Settlement Agreement ¶ 4(a)). But that restriction by its own terms expired in August 2021. (2010

Settlement Agreement ¶ 4(a)).  The clear contractual agreement is that, after that date, Mr. Radko is free to use his own name in connection with the Christmas ornament and decoration business.

Plaintiff never disclosed the 2010 Settlement Agreement, or the 2005 ENCA that it replaced, or made it a part of the record on its motion for injunctive relief.  Defendants introduced these agreements in their opposition to the motion.  Thereafter, at oral argument, Plaintiff went to great pains to urge the Court to ignore the language in the 2010 Settlement Agreement.  Plaintiff argued that the SPA and IATA themselves restricted Mr. Radko's ability, indefinitely, to use his name commercially.  However, upon further inquiry by the Court, Plaintiff could not explain the purpose of section 4(a) of the 2010 Settlement Agreement, if, as Plaintiff contends, the SPA and IATA had already restricted Mr. Radko's ability to use his name commercially.  Indeed, under both New York and North Carolina law,[4] courts disfavor contract interpretations that render provisions of a contract superfluous.  *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002) (New York law); *Emmanuel Afr. Methodist Episcopal Church v. Reynolds Const. Co.*, 217 N.C. App. 176, 180, 718 S.E.2d 201, 204 (N.C. Ct. App. 2011) (North Carolina law).  Even if Plaintiff were correct that the earlier agreements had limited Mr. Radko's right to use his own name, these agreements must be read together with the 2005 ENCA, which was made a condition of the SPA and is attached as an exhibit to the SPA — but not to Plaintiff's moving papers.  Those three agreements operate together and must be read in a manner that gives effect to and harmonizes all terms.  *See Int'l Multifoods Corp.*, 309 F.3d at 86; *Emmanuel Afr. Methodist Episcopal Church*, 217 N.C. App. at 180.  Moreover, the 2010 Settlement Agreement replaces the 2005 ENCA and expressly says that in the event of

---

[4] The SPA and 2010 Settlement Agreement are governed by North Carolina law.  (Shepardson Decl. ¶ 25; SPA § 13.8; 2010 Settlement Agreement, Recital ¶ 6).  The IATA is governed by New York law.  (Shepardson Decl. ¶ 25; IATA ¶ 5).

any conflict with the SPA and/or the IATA, the Settlement Agreement controls.  (2010 Settlement Agreement ¶ 4(h)).  That settlement agreement unambiguously put an end date on any restriction on Mr. Radko's ability to use his own name.

The Court is troubled by Rauch's lack of candor with the Court.  As noted, Rauch did not make either the 2005 ENCA or the 2010 Settlement Agreement part of the record in connection with its Motion.  Those agreements were put before the Court by Defendants as part of the record evidence in opposition to Rauch's request for injunctive relief.  (*See* Def. Opp'n Ex. E; Radko Decl. Ex. C).  This is particularly troubling where the 2005 ENCA was explicitly incorporated into the SPA, which conditions the parties' obligations under the SPA on the signing of the 2005 ENCA.  (SPA §§ 8.1(f), 8.2(b)).  Moreover, the 2005 ENCA was Exhibit A to the SPA, (SPA at 2), and yet Plaintiff put the SPA into the record *without all the incorporated documents and exhibits*.  Significantly, the 2010 Settlement Agreement was entered into *specifically* to resolve a substantially similar trademark infringement suit that the parties litigated almost a decade ago.  *See* Background Section, Part II *supra*.  Mr. Radko has complied with the terms of that settlement agreement over the course of the last decade.  Rauch's attempt now to manufacture a breach of contract claim, *without putting into the record all of the integrated contracts*, in order to deny Mr. Radko the benefits of the Settlement Agreement to which both parties previously consented and with which Mr. Radko has complied is highly concerning to the Court.  Nonetheless, even without considering the context of the contracts to which the parties agreed, the contracts themselves clearly do not say what Rauch claims they do.

The Second Circuit's opinion in *JA Apparel Corp. v. Abboud*, 568 F.3d 390 (2d Cir. 2009), which post-dates the contracts at issue here, nonetheless is instructive.  In *JA Apparel*, world famous fashion designer Joseph Abboud entered into a contract pursuant to which he sold to JA Apparel the exclusive rights to the commercial use of the name "Joseph Abboud" and

trademarks containing that name.  *Id.* at 393.  Specifically, Mr. Abboud transferred the "right, title and interest in and to . . . [t]he names, trademarks, trade names, service marks, logos, insignias, and . . . all trademark registrations and applications therefor, and the goodwill related thereto."  *Id.*  Thereafter, Mr. Abboud undertook preparations for the launch of a new clothing line under the label "jaz."  *Id.* at 394.  In response, JA Apparel sued for breach of contract and trademark infringement.  *Id.*  Following a bench trial, the district court found the contract to be unambiguous and therefore declined to consider the parties' parol evidence.  *Id.* at 395.  The district court interpreted the contract to have unambiguously conveyed to JA Apparel "all of Abboud's rights to use his name for commercial purposes," and found that Abboud's planned use of his name to market "jaz" would thus constitute a breach of contract."  *Id.* at 395.

The Second Circuit reversed and remanded, holding that the "scope of the right to use Abboud's name conveyed by the Sale Agreement [was] ambiguous."  *Id.* at 397.  It concluded that although the use of the word "names" in the contract could refer to "all commercial right to use Joseph Abboud's name," it was significant that it did not do so explicitly.  *Id.* at 397–98. The Second Circuit found that it was not dispositive that JA Apparel had "paid a large price for the Joseph Abboud brand . . . [because it did] not necessarily mean that JA Apparel purchased the right to prohibit Abboud from using his name to refer to himself in a non-trademark sense." *Id.* at 398.  The Second Circuit held that it could also be reasonable to interpret the contract to have only sold the rights to Mr. Abboud's name as a mark because the use of the word "name" in the contract was in conjunction with a transfer of rights of other intangible assets.  *Id.*[5]

---

[5] On remand, the district court concluded that Mr. Abboud had not relinquished his rights to use his personal name. *JA Apparel Corp. v. Abboud*, 682 F. Supp. 2d 294, 308 (S.D.N.Y. 2010).  It held that because the contract was ambiguous, extrinsic evidence must be considered and such evidence favored Mr. Abboud's interpretation of the agreement.  *Id.*

The circumstances surrounding this case are even more favorable to Mr. Radko than they were for Mr. Abboud.  At best for Rauch, under *JA Apparel*, the use of the term "Seller's name" in the SPA and IATA is ambiguous.  Read in isolation from other provisions of those contracts and from the contemporaneous 2005 ENCA, the term "Seller's name" could refer to all commercial rights to use Mr. Radko's name, but it could also refer to the transfer of the right to use Mr. Radko's name as a mark because the use of the word "name" in the contract was in conjunction with a transfer of rights of other intangible assets.  *Id.*  What sets this case apart from *JA Apparel* however, and undermines a likelihood of success by Rauch, is that the parties also entered an additional contemporaneous agreement, the 2005 ENCA, which specifically contemplated Mr. Radko selling the *commercial* use of his name for *only a limited period of time*.  (2005 ENCA ¶ 11(c)).  After litigation ensued, that agreement was superseded by the 2010 Settlement Agreement, which expressly restricted Mr. Radko's use of his name commercially, *until August 2021*.  (2010 Settlement Agreement ¶ 4(a)).  To the extent that the SPA and IATA could reasonably be interpreted to conflict with the 2010 Settlement Agreement, the 2010 Settlement Agreement expressly states that its provision would control.  (2010 Settlement Agreement ¶ 4(h)).

Plaintiff asserts that *JA Apparel* is inapposite because the contract there did not distinguish between the name rights and trademark rights, as it claims the SPA and IATA do. (Pl. Reply 5).  However, the SPA and IATA only contemplate the transfer of the rights in Mr. Radko's name as a trade name or trademark.  (*See* SPA §§ 2.1, 3.11(a)(Q), (O), (J), (N); IATA ¶ 1).  It was the 2005 ENCA that restricted the use of Mr. Radko's name personally.  (2005 ENCA ¶ 11(c)).  By the terms of the 2010 Settlement Agreement, which superseded the 2005 ENCA, that restriction expired in August 2021.  (2010 Settlement Agreement ¶ 4(a)).  After that

date, Mr. Radko is free to use his own name in connection with the Christmas ornament and decoration business.

Plaintiff urges that *JLM Couture, Inc. v. Gutman*, No. 21-870, 2022 WL 211017 (2d Cir. Jan. 25, 2022) is on point with this case.  In *JLM Couture*, bridal designer and social media influencer Hayley Paige Gutman signed an employment agreement with JLM Couture, a bridal design and fashion company, which granted JLM Couture certain rights "over the use of 'Designer's Name,' defined as 'Hayley,' 'Paige,' 'Hayley Paige Gutman,' 'Hayley Gutman,' 'Hayley Paige,' or any derivative thereof," and "the right to register the Designer's Name as trademarks (the 'Trademarks')." *Id.* at *4–5, 8–9.  In addition, Ms. Gutman agreed that she "shall have no right to the use of the Trademarks, Designer's Name or any confusingly similar marks or names in trade or commerce." *Id.* at *9.  The agreement reiterated that Ms. Gutman "assign[ed] to [JLM Couture] . . . the Designer's Name and the Trademarks." *Id.*  After Ms. Gutman entered into agreements with third-party companies to promote their products, JLM Couture brought breach of contract and trademark infringement claims (among others) against her. *Id.* at *12.  JLM Couture sought a preliminary injunction, which the district court granted. *Id.* at *12–13.

The Second Circuit affirmed the district court's decision to enforce the Name-Rights portion of the employment agreement. *Id.* at *25.  Ms. Gutman asserted that the Name-Rights provision was ambiguous and argued that the term "Designer's Name" should be read in light of its proximity to "Trademarks." *Id.* at *23.  Under this reading, she urged, Ms. Gutman transferred the right to use her name "purely as a trademark." *Id.*  However, the Second Circuit rejected this argument, finding that language in the employment agreement unambiguous since the terms "Designer's Name" and "Trademarks" were explicitly defined separately in the contract. *Id.* at *22–23.

Plaintiff's reliance on *JLM Couture* is misplaced since that case is manifestly distinguishable from this case.  First, the Second Circuit made clear that its conclusion in *JLM Couture* was based on the fact that the terms "Designer's Name" and "Trademarks" in the contract were separately defined before they were used in the same provision to designate the rights that Ms. Gutman was transferring to JLM Couture.  *Id.* at *8–9.  Here, the SPA and IATA refer to the transfer of the rights in Mr. Radko's name as *included in* the transfer of "Seller Intangible Assets."  (*See* SPA § 2.1; IATA ¶ 1).  Even more significant, and completely absent from *JLM Couture*, the parties here entered into a third agreement, the 2010 Settlement Agreement, which *did* contemplate the transfer of the right to use Mr. Radko's name personally, *but that limitation expressly expired in August 2021*.  (2010 Settlement Agreement ¶ 4(a)).  Moreover, the 2010 Settlement Agreement expressly supersedes the SPA and IATA to the extent there is a conflict between those agreements and the 2010 Settlement Agreement.  (2010 Settlement Agreement ¶ 4(h)).  At oral argument, Plaintiff conceded that it was not basing any of its claims on any conduct of Mr. Radko that preceded the August 2021 expiration of the restriction on Mr. Radko's right to use his own name.

On the record before it, the Court cannot conclude that Plaintiff has established a likelihood of success on the merits of its breach of contract claim.  To the extent that Plaintiff seeks to enjoin Defendants from breaching the SPA and IATA, Plaintiff's motion is denied.

## II. Plaintiff Has Not Established A Likelihood Of Success On Its Trademark Infringement And Related State Law Claims

### A. Rauch's Trademark Infringement Claim

Under the Lanham Act, a plaintiff alleging trademark infringement must demonstrate that "(1) 'it has a valid mark that is entitled to protection' and that (2) the defendant's 'actions are

14

likely to cause confusion with [that] mark.'"[6] *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020) (quoting *The Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1996)).[7]  In assessing whether a likelihood of confusion exists, courts apply the eight-factor balancing test announced in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961).  Those factors include: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) the sophistication of consumers in the relevant market.  *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009).

Defendants do not contest that Plaintiff's mark is registered and entitled to protection. (*See* Def. Br.).  Defendants contest only that they are using the Radko name *as a mark*, and if so Plaintiff's showing with respect to the fifth *Polaroid* factor: evidence of actual confusion.  (Def. Br. 22–29).  However, even if Defendants could successfully rebut whether Plaintiff has shown evidence of actual confusion, "it is black letter law that actual confusion need not be shown to prevail under the Lanham Act."  *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986).  The Court need not reach this issue however, since on the record before

---

[6] Earlier Second Circuit cases divided a trademark infringement claim into six elements: "(1) [that a plaintiff] has a valid mark that is entitled to protection . . . ; (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale . . . or advertising of goods or services . . . (5) without the plaintiff's consent," and (6) such use "is likely to cause confusion."  *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 405 (2d Cir. 2005) (quotations and citations omitted).  Nonetheless, the inquiry remains the same: whether Plaintiff has a valid mark entitled to protection and whether defendant took actions to cause confusion with that mark.

[7] The same elements must be proven to prevail on a claim of unfair competition and false designation of origin under 15 U.S.C. § 1125(a), and on a claim for unfair competition under New York law, the latter of which also requires a showing of bad faith.  *Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 440 (S.D.N.Y. 2017).

it, the Court does not find that Plaintiff has a likelihood of success in establishing that Mr. Radko used his name as a mark.

### B.  Mr. Radko's Fair Use Defense

Defendants assert that their use of the name "Christopher Radko" is a fair use that absolves them of any liability for Trademark infringement.  (Def. Opp'n 12).  The Lanham Act provides that if a party uses words constituting a registered mark "in a purely descriptive sense, this use may qualify as permissible fair use." *Tiffany*, 971 F.3d at 92 (quoting *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013)).  Fair use is an absolute defense to a claim for Trademark Infringement, even if a defendant's conduct would otherwise constitute infringement. *See id.*  In establishing a fair use defense, a defendant must prove that it used an allegedly infringing term "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith."  *Id.* (quoting *JA Apparel*, 568 F.3d at 400); *see also* 15 U.S.C. § 1115(b)(4).

### 1.  Mr. Radko Uses His Name Other Than As A Mark

With respect to the first element of a fair use defense, the Second Circuit has equated "use . . . as a mark" with "the use of [a] term as a symbol to attract public attention." *JA Apparel*, 568 F.3d at 400 (quoting *Safeway Stores, Inc. v. Safeway Properties, Inc.*, 307 F.2d 495, 499 (2d Cir. 1962)).  "When use of the challenged words or phrase is accompanied by a defendant's own, conspicuously visible mark, this generally does not constitute trademark use." *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 530 (S.D.N.Y. 2013) (quoting *JA Apparel*, 682 F. Supp. 2d at 310 (collecting cases)).  Courts should also consider the

> physical nature of the use in terms of size, location, and other characteristics in comparison with the appearance of other descriptive matter or other trademarks, as well as the presence or absence of precautionary measures such as labeling or other devices designed to minimize the risk that the term will be understood in its trademark sense.

*JA Apparel*, 568 F.3d at 401 (internal quotation marks and citations omitted).

On the record before it, the Court cannot find that Mr. Radko has used his name as a mark in relation to the Heartfully Yours brand.  The parties agree that Defendants have promoted Heartfully Yours through (1) the website of Heartfully Yours, (2) the Facebook and Instagram pages of Heartfully Yours, (3) Mr. Radko's personal Facebook and Instagram pages, and (4) at the Atlanta Market Winter 2022 trade show.  (Pl. Br. 7–10; Radko Decl. ¶ 21).  The Court will address these promotional activities in turn.

### a.  The Website Of Heartfully Yours

Plaintiff contends that Mr. Radko used his name as a mark as recently as January 10, 2022, when the following appeared on the Heartfully Yours website landing page:



(Shepardson Decl. ¶ 92).  The name of the business entity "Heartfully Yours" is typed in bold, stylized, and enlarged font, while Mr. Radko's name appears at the bottom of the page, in grayish, plain font.  As such, it is clear that the mark, as used on the website, is "Hearfully Yours" alone and that Mr. Radko's name is not being used as a mark on the website.  Moreover, Mr. Radko's name is "accompanied by [Defendants'] own, conspicuously visible mark," and as such, is not being use as a trademark.  *JBCHoldings*, 931 F. Supp. 2d at 530 (citation omitted).

Plaintiff also takes issue with the usage of Mr. Radko's personal name throughout the website. (Pl. Br. 9–10; Shepardson Decl. ¶ 93). But Mr. Radko is free to use his own name in a descriptive sense as long as he's not using it as a mark. *See* 15 U.S.C. § 1115(b)(4). Indeed, just because Rauch purchased the Christopher Radko brand, it does not necessarily follow that it "purchased the right to prohibit [Mr. Radko] from using his name to refer to himself in a non-trademark sense." *JA Apparel*, 568 F.3d at 398. Plaintiff cites to no other section of the Heartfully Yours website in support of its contention that Mr. Radko's name is used as a mark. (Pl. Br. 9–10; Shepardson Decl. ¶ 93).

### b. The Facebook And Instagram Pages For Hearfully Yours

Plaintiff similarly alleges that Mr. Radko uses his name as a mark on the Facebook and Instagram pages for Heartfully Yours. Plaintiff has provided the Court only two screenshots in connection with its motion for injunctive relief:

 

(Shepardson Decl. ¶¶ 73, 75). These screenshots in no way support a claim that Mr. Radko is using his name *as a mark*. The first post does not even mention Mr. Radko's name at all. (*See*

Shepardson Decl. ¶ 73).  In the second post, Mr. Radko's name appears in the middle of a small paragraph to describe the origin of the Hearfully Yours business.  (*See* Shepardson Decl. ¶ 75). Even in this description, the name of the business, Heartfully Yours, is stylized in a manner that draws attention as a symbol for the business.  Mr. Radko's name is not so utilized.  *See JA Apparel*, 568 F.3d at 400 (equating use as a mark with "the use of [a] term as a symbol to attract public attention").  Plaintiff also references other posts, for which it does not provide any screenshots or other evidentiary support, in which it claims that Mr. Radko's name is used to describe the origin of Heartfully Yours.  (*See* Shepardson Decl. ¶¶ 74, 76–80).  However, in that context, his name is not being used as "a symbol to attract public attention," but merely to describe Heartfully Yours.  *See JA Apparel*, 568 F.3d at 400.

### c.  Mr. Radko's Personal Facebook And Instagram Pages

Plaintiff also takes issue with Mr. Radko's Facebook And Instagram posts promoting Heartfully Yours.  (Pl. Br. 7).  However, having reviewed Plaintiff's cited examples of Mr. Radko's promotions, (*see* Shepardson Decl. ¶¶ 61–71), it appears that likelihood of success based on these posts is remote given that Mr. Radko did not use his name *as a mark* in promoting Heartfully Yours.

### d.  The Atlanta Market Winter 2022 Trade Show

Finally, Plaintiff complains of the use of Mr. Radko's name in promoting Heartfully Yours at the Atlanta Market Winter 2022 Trade Show.  (Pl. Br. 8–9).  However, here again, Plaintiff provides no record evidence in its motion that shows a likelihood of success on Plaintiff's claim that Mr. Radko used his name *as a mark* in promoting the Heartfully Yours

brand.  (*See* Shepardson Decl. ¶¶ 87–89).  In support of its claim, Plaintiff provides evidence of

an advertisement that was placed on elevator doors at the trade show.  (Pl. Br. 8–9).



(Shepardson Decl. ¶ 90).  That advertisement does not use Mr. Radko's name *as a mark*.  Mr.

Radko's name appears in the advertisement in bold lettering, but it appears in the middle of a

paragraph in which the ad describes the origin of Heartfully Yours.  (Shepardson Decl. ¶ 90).

While the advertisement prominently features a picture of Mr. Radko's face, (Shepardson Decl.

¶ 90), Plaintiff does not and cannot allege that Mr. Radko's face is the subject of a registered

trademark.

*     *     *

On the record before it, the Court cannot find that Plaintiff is likely to succeed on its

claim that Mr. Radko used his name *as a mark* in promoting the Heartfully Yours brand.  Mr.

Radko is free to promote his business using his own name.  At oral argument, Plaintiff insisted

that Mr. Radko could not be permitted to use his name in connection with his business, going so

20

far as to say that he would have to change his name or use "John Doe" in order to continue to promote Heartfully Yours.  The Court finds this suggestion implausible.  So long as Mr. Radko continues to use his name, as he has, in a manner other than as a mark, he does not infringe on Plaintiff's registered trademark.

The Court is also mindful that the parties have previously litigated and settled what appears to be a similar claim and have agreed to an expiration date on certain restrictions on Mr. Radko's right to use his own name.  This fact coupled with Plaintiff's failure to advise the Court of that agreement causes the Court to view Plaintiff's motion for injunctive relief as particularly suspect.

## 2.  In A Descriptive Sense

Plaintiff fails to show a likelihood of success for the additional reason that, on the present record, it appears that Mr. Radko has used his name solely in a descriptive sense, which may well be a permissible fair use.  With respect to the second element of a fair use defense, an "owner's rights in a mark extend only to its significance as an identifying source, not to the original descriptive meanings of a mark, and so where another person uses the words constituting that mark in a purely descriptive sense, this use may qualify as permissible fair use." *Kelly-Brown*, 717 F.3d at 308 (quoting *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 64 (2d Cir. 2000)).  Descriptive use "is evident in such situations where a mark incorporates a term that is the only reasonably available means of describing a characteristic of another's goods." *JBCHoldings*, 931 F. Supp. at 530–31.  In situations where a mark is comprised of a person's name, Courts in this Circuit regularly hold that there is no other way to inform potential customers of that person's involvement in a brand without using his or her name. *Id.* ("There was no way for Puglia to inform her clients that the services she would be providing would include the assistance of Janou Pakter without invoking Janou's name"); *JA*

21

*Apparel*, 682 F. Supp. 2d at 313 ("Abboud's use of his name is the only 'reasonably available means' by which he can inform his potential customers that he is the designer of the 'jaz' line.").

The references to Mr. Radko on the Heartfully Yours' website, Facebook and Instagram pages all make clear that they are referring to the individual artist.  (Radko Decl. Exs. G, H, I).  Mr. Radko's use of his name is the only reasonable available means by which he can inform potential customers that he is the designer of the Heartfully Yours seasonal décor products.  There are also repeated disclaimers on the website, Facebook page, and Instagram account, which make clear that Mr. Radko is not connected to the Chrisopher Radko mark itself. (Radko Decl. Exs. G, H, I); *see also Consumers Union of United States, Inc. v. General Signal Corp.*, 724 F.2d 1044, 1053 (2d Cir. 1983) ("Disclaimers are a favored way of alleviating consumer confusion as to source or sponsorship.").  As such, on this record, the Court cannot conclude that Plaintiff is likely to succeed on its claim that Mr. Radko has used his name in promoting Heartfully Yours in a manner other than as in a descriptive sense.

### 3.  Good Faith

With respect to the third element of the fair-use defense, the inquiry into the defendant's good faith "concerns the question whether the user of a mark intended to create consumer confusion as to source or sponsorship." *JA Apparel*, 568 F.3d at 401 (quoting *EMI Catalogue*, 228 F.3d at 65–66).  "This analysis is similar to the sixth *Polaroid* factor, which examines whether a defendant 'intended to capitalize on plaintiff's good will.'" *JA Apparel*, 682 F. Supp. 2d at 311 (quoting *EMI Catalogue*, 228 F.3d at 66).

While a surname may acquire secondary meaning and become a trademark, it will generally "continue[ ] to serve the important function to its bearer of acting as a symbol of that individual's personality, reputation and accomplishments as distinguished from that of the business, corporation or otherwise, with which he has been associated." *JA Apparel*, 682 F.

Supp. 2d at 311 (quoting *Madrigal Audio Labs.*, 799 F.2d at 822).  "If an individual has previously sold 'use of his name and its goodwill, to the plaintiff, . . . courts will be especially alert to foreclose attempts by the seller to keep for himself the essential thing he sold, and also keep the price he got for it.'"  *JA Apparel*, 682 F. Supp. 2d at 312 (quoting *Levitt Corp. v. Levitt*, 593 F.2d 463, 468 (2d Cir. 1979)).  Nonetheless, if a court determines that an individual sold only the right to use his name as a trademark, as opposed to the exclusive right to use his name commercially, the seller may advertise his affiliation with a new company.  *Madrigal Audio Labs.*, 799 F.2d at 823.

Though Mr. Radko sold the right to use his name as a trademark, the parties expressly agreed that he would not use his name commercially only until August 2021.  *See supra* Part I. After that date, he is within his rights to advertise his affiliation with any company selling seasonal décor.  Moreover, there are repeated disclaimers on the website and social media pages of Heartfully Yours which make clear that Mr. Radko is not connected to the Chrisopher Radko mark itself.  (Radko Decl. Exs. G, H, I).  "Although a disclaimer cannot insulate [a defendant] from liability, it indicates good faith use of the service marks."  *Bihari v. Gross*, 119 F. Supp. 2d 309, 324 (S.D.N.Y. 2000); *see also Consumers Union of United States*, 724 F.2d at 1053.  As such, on this record, the Court cannot conclude that Rauch is likely to succeed on the merits of its trademark infringement claim.

### C.  Rauch's Related State Law Claims

The elements of Plaintiff's related state law claims are virtually identical to the elements for federal Trademark Infringement.  *See JA Apparel*, 682 F. Supp. 2d at 317.  Moreover, fair use is also a defense to Plaintiff's related state law claims.  *Id.*  As such, because the Court cannot find that Plaintiff has demonstrated a likelihood of success on the merits of its Trademark Infringement claims, it also concludes that Plaintiff has not demonstrated a likelihood of success

on the merits of the related state law claims.  *See Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425, 434 n.3 (S.D.N.Y.), *aff'd*, 674 F. App'x 16 (2d Cir. 2016).  To the extent that Plaintiff seeks to enjoin Defendants from infringing on its trademark, Plaintiff's motion is denied.

<u>**CONCLUSION**</u>

On the record before it, the Court cannot find that Plaintiff has shown a likelihood of success on the merits on its breach of contract, trademark infringement, or related state law claims or that sufficiently serious questions going to the merits of these claims make them a fair ground for litigation.  As such, Plaintiff's Motion for a Preliminary Injunction is DENIED.

**SO ORDERED.**

**Date:  March 14, 2022**
**New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**