USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/7/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAUCH INDUSTRIES, INC.,

                 Plaintiff,

-against-

HEART ARTIST LLC and CHRISTOPHER RADKO,

                 Defendants.

1:22-cv-0909 (MKV)

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO AMEND**

MARY KAY VYSKOCIL, United States District Judge:

    Plaintiff Rauch Industries, Inc. brings this action against Defendants Heart Artist LLC and Christopher Radko for breach of contract, trademark infringement, and related claims. Two motions, both filed by Defendants, are pending before this Court. First, Defendants move for leave to amend their Answer pursuant to Federal Rule of Civil Procedure 15(a)(2). Second, Defendants request that the Court consider several of Plaintiff's interrogatory responses in deciding the motion to amend. For the following reasons, both motions are GRANTED in part and DENIED in part.

## BACKGROUND

    Plaintiff filed its Complaint and a motion for a preliminary injunction in February 2022. *See* Complaint [ECF No. 1]; Motion for Order to Show Cause for Preliminary Injunctive Relief [ECF No. 7]. Plaintiff's motion sought to enjoin Defendants from using: (a) the names "Christopher Radko," "Mr. Radko," "Christopher," "Radko," or any variations thereof, and (b) Plaintiff's trademarks "CHRISTOPHER RADKO," "RADKO," or any variations thereof, in connection with the sale of Christmas ornaments. *See* Proposed Order to Show Cause Without Emergency Relief [ECF No. 6].

    The Court held a hearing on Plaintiff's motion for a preliminary injunction in early March. *See* Transcript of Proceedings [ECF No. 61] ("Transcript"). Shortly thereafter, the Court issued

an Opinion and Order denying Plaintiff's motion for a preliminary injunction. *See* Opinion and Order [ECF No. 60] ("PI Op."). The Opinion concluded that Plaintiff had not established a likelihood of success on its breach of contract, trademark infringement, or related state law claims. PI Op. 7–24.

There was a flurry of activity in the next several months. Plaintiff substituted its counsel in late March, *see* Stipulation of Substitution of Counsel [ECF No. 76], and Defendants answered in late April, *see* Answer [ECF No. 79]. Then, in June 2022, Defendants notified the Court they sought leave to amend their Answer to include two counterclaims: one for cancellation of the Radko marks, and another for tortious interference with business relationships. *See* Joint Letter 2–3 [ECF No. 90] ("JL"). The following day, Defendants substituted their counsel. *See* Notice of Substitution of Attorney [ECF No. 91].

The Court thereafter held an Initial Pretrial Conference with the parties and entered a Case Management Plan and Scheduling Order. *See* Order [ECF No. 82]; Civil Case Management Plan and Scheduling Order [ECF No. 94] ("CMP"). The CMP, dated June 14, 2022, states that "[a]ny motion to amend . . . shall be filed within 30 days from the date of this Order." CMP ¶ 3. As requested, the CMP also granted Defendants leave to file a motion to amend their Answer to add counterclaims for cancellation of the Radko marks and tortious interference. CMP ¶ 3.

Two days before the expiration of the 30-day period, Defendants filed a motion to amend, accompanied by a proposed amended answer and counterclaims. *See* Motion to Amend/Correct Answer [ECF No. 97]; Proposed Amended Answer Redlined [ECF No. 99-1] ("proposed First Amended Answer" or "FAA"); Memorandum of Law in Support [ECF No. 100] ("Def. Mem."). The proposed First Amended Answer included several minor revisions to the original answer, and

added six[1] new affirmative defenses and three proposed counterclaims: libel, tortious interference, and attempted monopolization. *See* FAA. Plaintiffs opposed the motion to amend. Memorandum of Law in Opposition [ECF No. 101] ("Pl. Mem.").

Defendants filed a Reply in early August, accompanied by a *newly revised* proposed amended answer. *See* Reply Memorandum of Law [ECF No. 105] ("Reply"); Proposed Amended Answer Redlined [ECF No. 104-2] ("proposed Second Amended Answer" or "SAA"). Of note, the proposed Second Amended Answer removed five of the six proposed affirmative defenses and the counterclaim for attempted monopolization. *Compare* FAA Affirmative Defenses ¶¶ 4–9, *with* SAA Affirmative Defenses ¶ 4; Reply 9; Letter [ECF No. 106]. Defendants also *added* several paragraphs "more clearly alleg[ing]" the tortious interference counterclaim. Reply 7; *see* SAA Counterclaims ¶¶ 26–27, 29–30, 37–38, 53–54, 56–57. In addition, Defendants filed a letter motion urging the Court to consider Plaintiff's interrogatory responses in assessing the proposed counterclaims.[2] *See* Letter Motion [ECF No. 107].

## LEGAL STANDARD

Rule 15(a) directs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "A district court has broad discretion in determining whether to grant leave to amend." *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000). Leave to amend should be freely given absent "undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

---

[1] Although the proposed First Amended Answer includes six new affirmative defenses, Defendants contend they only sought to add five. *Compare* FAA Affirmative Defenses ¶¶ 4–9, *with* Def. Mem. 8.

[2] Defendants attached Plaintiff's interrogatory responses to the letter motion. *See* Plaintiff's Interrogatory Response [ECF No. 107-1] ("Interrogatories"). Plaintiff then filed a separate letter motion, with Defendants consent, requesting that the Court seal excerpts of the interrogatory responses. *See* Letter Motion to Seal [ECF No. 108]; Redaction to Letter Motion [ECF No. 109]. The Court granted the sealing motion. *See* Order [ECF No. 111].

However, where a party seeks leave to amend "*after* the deadline" established by a scheduling order issued pursuant to Rule 16(b), the Court may deny leave to amend "where the moving party has failed to establish good cause." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (emphasis added); *see also* Fed. R. Civ. P. 16(b). The Second Circuit has explained that "good cause" depends "on the diligence of the moving party." *Parker*, 204 F.3d at 340. If the moving party establishes "good cause," the Court may then determine "whether the movant has also met the liberal standards of Rule 15." *Owens v. Centene Corp.*, No. 20-CV-118 (EK), 2021 WL 878773, at *2 (E.D.N.Y. Mar. 9, 2021) (citing *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007)).

## ANALYSIS

Plaintiff argues that leave to amend should be denied because (1) Defendants unduly delayed in seeking amendment and (2) the proposed amendments are futile.

### I. Delay

Defendants did not unduly delay in filing the proposed *First* Amended Answer on July 12, 2022. Because Defendants filed their Answer on April 29, 2022, their ability to amend as of right expired on May 20, 2022. *See* Fed. R. Civ. P. 15(a)(1)(A). Less than three weeks later, on June 9, 2022, Defendants informed the Court they sought leave to amend. JL 2–3. Further, this Court's Case Management Plan and Scheduling Order—entered *after* Defendants sought leave to amend—granted Defendants until July 14, 2022 to file "[a]ny motion to amend."[3] Defendants filed their proposed amendment two days *before* that deadline.

---

[3] The CMP specifically granted Defendants leave to "file a Motion to Amend their Answer with counter-claims for cancellation of the Radko Trademarks, and for tortious interference with business relationships." CMP ¶ 3. However, the CMP also stated that "*[a]ny* motion to amend . . . shall be filed within 30 days from the date of this Order." CMP ¶ 3 (emphasis added). Although Defendants did not specifically request leave to file the tortious interference counterclaim, affirmative defenses, and other amendments, they did file their motion within the 30-day period established by the CMP.

Plaintiff argues that Defendants unduly delayed in seeking amendment because they knew or should have known "of almost all facts underlying their new claims at the time they filed their original Answer." Pl. Mem. 21.  Even if true, that fact is irrelevant under the "liberal standard of Rule 15(a)." *Parker*, 204 F.3d at 340.  In addition, Plaintiff fails to demonstrate bad faith or undue prejudice because "[a]llegations that an amendment will require the expenditure of additional time, effort, or money," standing alone "do not constitute 'undue prejudice,'" *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993)).

The Court comes to a different conclusion regarding the proposed additions made in the proposed *Second* Amended Answer.  Defendants added several paragraphs "more clearly alleg[ing]" the tortious interference counterclaim to the proposed Second Amended Answer that were *not* included in the proposed First Amended Answer.  Reply 7; *see* SAA Counterclaims ¶¶ 26–27, 29–30, 37–38, 53–54, 56–57.  Substantively, these new paragraphs allege that various clients informed Defendants they "intended to place" orders, SAA Counterclaims ¶¶ 29, 37, 53, but that the clients did not end up "order[ing] as much product from Defendants" because of Plaintiff's interference, SAA Counterclaims ¶¶ 27, 30, 38, 54, 57.  Defendants also generally allege that "Plaintiff has contacted numerous additional customers . . . [and] prospective customers of Defendants" and "warned them not to purchase product from Defendants."  SAA Counterclaims ¶ 56. Defendants filed the proposed Second Amended Answer on August 2, 2022—several weeks *after* the expiration of the 30-day deadline established in the CMP and without requesting leave from the Court.

Accordingly, the Court must evaluate whether Defendants have shown "good cause" for modifying the deadline established in the CMP.[4] *Parker*, 204 F.3d at 340; *see also* Fed. R. Civ. P. 16(b)(4). "Whether good cause exists turns on the diligence of the moving party." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (citation omitted)). A party does not act diligently when the proposed amendment is based "on information that the party knew, or should have known, in advance of the deadline." *Sokol Holdings, Inc. v. BMD Munai, Inc.*, No. 05 CIV. 3749 KMW/DF, 2009 WL 2524611, at *8 (S.D.N.Y. Aug. 14, 2009). "It is the movant's burden to establish good cause." *Owens*, 2021 WL 878773, at *3.

To the extent Defendants intend to suggest they learned of the facts underlying these new allegations from Plaintiff's interrogatories, the Court is largely unconvinced.[5] Several paragraphs added to the proposed Second Amended Answer concern events that occurred *before* the filing of the proposed *First* Amended Answer. *See, e.g.*, SAA Counterclaims ¶¶ 29, 37, 53 (customers informed *Defendants* that they intended to place orders). Similarly, the interrogatory responses do not speak to whether Defendants' customers intended to, or eventually chose not to, place orders. *See* SAA Counterclaims ¶¶ 26–27, 30, 38, 54, 57. These allegations therefore appear to be based "on information" Defendants "knew, or should have known," before filing the proposed Second Amended Answer. *Sokol*, 2009 WL 2524611, at *8.

However, Defendants' allegations that "Plaintiff has contacted numerous additional customers . . . [and] prospective customers of Defendants" and "warned them not to purchase product from Defendants" *are* evidenced by Plaintiff's interrogatory responses. *See* SAA

---

[4] Defendants have only requested leave to amend under Rule 15 and do not address Rule 16.

[5] The Court *may* consider Plaintiff's interrogatory responses in evaluating whether Defendants have demonstrated good cause under Rule 16(b). *See Permatex, Inc. v. Loctite Corp.*, No. 03 CIV.943 LAK GWG, 2004 WL 1354253, at *3 (S.D.N.Y. June 17, 2004). However, the Court does not consider the interrogatory responses for purposes of the futility analysis below, *see* Section II, because the Court may not rely "on materials outside of the pleadings" in such an analysis, which parallels Rule 12(b)(6), *see Permatex*, 2004 WL 1354253, at *3.

Counterclaims ¶ 56.  Specifically, the interrogatories show that Rauch has communicated with a number of customers about Defendants' products and its contention that Defendants are "infringing Plaintiff's trademarks." Interrogatories No. 6.  Because Defendants' allegations appear to be based on this new information, good cause justifies this amendment.

Denial on the grounds of delay is not warranted for the allegations included in the proposed First Amended Answer.  However, the Court finds Defendants did not act diligently regarding the new allegations in the proposed Second Amended Answer, with the exception of paragraph 56, which appears to be based on information learned during discovery.

## II.   Futility

Plaintiff next suggests the proposed amendments are futile.  "Where a party opposes leave to amend on 'futility' grounds, the appropriate legal standard is whether the proposed [pleading] fails to state a claim, the traditional Fed. R. Civ. P. 12(b) standard." *New Hampshire Ins. Co. v. Total Tool Supply, Inc.*, 621 F. Supp. 2d 121, 124 (S.D.N.Y. 2009) (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)); *see also GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019) ("[T]he plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense.").

Under that familiar standard, the amendment must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the [moving party] pleads factual content that allows the court to draw the reasonable inference that the [other party] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the Court "must accept as true all of the allegations contained in a [pleading]," this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

7

1. *Libel Counterclaim*

Defendants allege that Plaintiff libeled them in the cease-and-desist letter sent to Defendants' customer, Old World Accents, on March 8, 2022. *See* FAA Counterclaims ¶¶ 48–56; *see also* March 8, 2022 Letter [ECF No. 98-1] ("March 8 Letter"). The counterclaim alleges the March 8 Letter libelously stated that Defendants were (1) "[m]aking repeated use of the Radko Marks without [Plaintiff's] permission," (2) "[v]iolating [Plaintiff's] trademark rights," and (3) "[c]ausing significant confusion in the marketplace." FAA Counterclaims ¶ 49. The Letter was sent six days after the preliminary injunction hearing where, Defendants contend, the Court indicated that Plaintiff's claims "were meritless." Reply 3. Defendants therefore argue that Plaintiff "knew or should have known" the statements in the March 8 Letter were false. FAA Counterclaims ¶ 50.

To state a libel claim in New York, Defendants must allege: (1) "a written defamatory statement of fact;" (2) "publication to a third party;" (3) "fault (either negligence or actual malice depending on the status of the libeled party);" (4) "falsity of the defamatory statement;" and (5) "special damages or per se actionability." *Electra v. 59 Murray Enters.*, 987 F.3d 233, 259 (2d Cir. 2021) (citation omitted). Plaintiff contests the first and third elements.

Plaintiffs contend that the March 8 Letter consisted of statements of opinion, rather than falsifiable statements of fact. Pl. Mem. 8–9; *see Sheindlin v. Brady*, 597 F. Supp. 3d 607, 625 (S.D.N.Y. 2022) ("Under New York law, pure opinion is not actionable because expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." (cleaned up)). "Distinguishing between fact and opinion is a question of law for the courts, to be decided based on 'what the average person hearing or reading the communication would take it to mean.'" *Davis v. Boeheim*, 24 N.Y.3d 262, 269, 22 N.E.3d 999, 1004–05, 998 N.Y.S.2d 131, 136–37 (N.Y. 2014). New York courts consider

three factors in determining whether a reasonable reader would consider a statement to be fact or opinion: "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact." *Id.* at 270, 1005, 137 (citation omitted).

The March 8 Letter used language that was precise and readily understood by a reasonable reader—according to Plaintiff, Defendants were "violating [their] trademark rights" by "making repeated use" of the Radko marks. These statements are capable of being proven true or false. Moreover, a reasonable reader "could have concluded that [the March 8 Letter was] conveying facts" about Defendants' ongoing misuse of Plaintiff's trademarks. *Gross v. New York Times Co.*, 82 N.Y.2d 146, 152, 623 N.E.2d 1163, 1167, 603 N.Y.S.2d 813, 817 (N.Y. 1993). In light of this Court's obligation to "consider whether *any* reading of the complaint supports the defamation claim" on a motion to dismiss, Defendants have plausibly alleged the first element of a libel claim. *Davis*, 24 N.Y.3d at 272, 22 N.E.3d at 1006, 998 N.Y.S.2d at 138 (emphasis added).

Addressing the third element, Plaintiff argues the libel claim is futile because Defendants fail to plausibly allege the statements were made deliberately or negligently. Pl. Mem. 9–10. However, the Complaint alleges that Plaintiff "knew or should have known" these statements were false because of the Court's critical comments at the preliminary injunction hearing. FAA Counterclaims ¶ 50. Although the Court is somewhat skeptical about the merits of that assertion, this inquiry "typically requires discovery." *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 113 (2d Cir. 2005). Resolution of this issue on a motion to dismiss is therefore inappropriate.

More broadly, Plaintiff argues that Defendants fail to state a libel claim because the March 8 Letter is protected by privilege as a "statement[] made by an attorney on behalf of his or her

9

client in connection with prospective litigation." *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 718, 28 N.E.3d 15, 18, 4 N.Y.S.3d 581, 584 (N.Y. 2015). But this privilege is lost where statements are "spoken with malice, knowledge of their falsity, or reckless disregard for their truth." *Giuffre v. Maxwell*, No. 15 CIV. 7433, 2017 WL 1536009, at *8 (S.D.N.Y. Apr. 27, 2017) (citation omitted). As described above, Defendants allege that Plaintiffs "knew or should have known" these statements were false because of the Court's comments at the preliminary injunction hearing. FAA Counterclaims ¶ 50. "Taking these allegations as true," Defendants plausibly allege that "the Letter was not sent in anticipation of good faith litigation." *Moraes v. White*, 571 F. Supp. 3d 77, 101 (S.D.N.Y. 2021); *see also Giuffre*, 2017 WL 1536009, at *8 (denying summary judgment motion where plaintiff alleged comments "were not made in good faith anticipation of litigation").

Accordingly, the Court concludes the proposed libel counterclaim is not futile. Plaintiff is GRANTED leave to amend the answer to include the proposed libel claim.

2.   *Tortious Interference Counterclaim*

Defendants propose a tortious interference claim based on Plaintiff's purported interactions with five of Defendants' customers. *See* FAA Counterclaims ¶¶ 57–79. Specifically, Defendants contend that Plaintiff improperly contacted these customers and warned them not to place orders with Defendants. To state a claim for tortious interference with business relations in New York, Defendants must allege "(1) [they] had business relations with a third party; (2) [Plaintiff] interfered with those business relations; (3) [Plaintiff] acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) [Plaintiff's] acts injured the relationship." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (citation omitted).

Defendants fail to plead interference "ris[ing] to the level of a breach of agreement or severance of the relationship" for Hiles Two and The Lamp Stand. *RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 198 (S.D.N.Y. 2011). Apart from Defendants' assertion that they "had a

10

business relationship with" these customers, *see* FAA Counterclaims ¶ 72, the proposed First Amended Answer does not allege any facts indicating the nature of these business relationships, such as whether these customers had ever placed an order—or even *intended* to place an order—with Defendants. *See* FAA Counterclaims ¶ 25 (Hiles Two); ¶ 26 (The Lamp Stand). Defendants' allegations are therefore insufficient to support a tortious interference claim as to Hiles Two and the Lamp Stand.

Defendants do, however, plausibly allege tortious interference with the customers Old World Accents and Amy Pyeatt. *See* FAA Counterclaims ¶ 31 (Old World Accents); ¶ 46 (Pyeatt). The March 8 Letter indicates that Old World Accents was selling Defendants' products on its website. *See* March 8 Letter. Similarly, Defendants allege Ms. Pyeatt was "planning to . . . purchase some ornaments from [Defendants]." FAA Counterclaims ¶ 71. Defendants also allege that Plaintiffs interfered with these relationships by discouraging Old World Accents and Ms. Pyeatt from placing orders. FAA Counterclaims ¶¶ 68, 71. Finally, Defendants allege that they were injured as a result of this interference. FAA Counterclaims ¶ 76. Although this is a closer call, viewing the allegations in their totality and accepting them as true, Defendants plausibly allege tortious interference as to Old World Accents and Ms. Pyeatt.

Defendants also plausibly allege facts indicating interference for the final customer: Kris Kringl. *See* FAA Counterclaims ¶¶ 18–24. Defendants allege that the customer "excitedly [told] Mr. Radko about the large order he planned to place," but that Plaintiff's representatives "subsequently threatened/intimidated/pressured" him and the order was never placed. FAA Counterclaims ¶¶ 63–65. Defendants therefore plausibly allege "severance of the relationship" with Kris Kringl. *RFP*, 788 F. Supp. 2d at 198.

Plaintiff argues the tortious interference claim is futile because Defendants do not plead wrongful means. "Where a tortious interference claim is premised on 'interference not with

contract rights but only with existing or prospective economic relations,' a plaintiff must plead wrongful means." *MZ Wallace Inc. v. Fuller*, No. 18CV2265(DLC), 2018 WL 4007645, at *5 (S.D.N.Y. Aug. 22, 2018) (quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190, 818 N.E.2d 1100, 1103, 785 N.Y.S.2d 359, 362 (N.Y. 2004)). To plead "wrongful means," Defendants must allege that Plaintiff's "conduct . . . amounted to a crime or an independent tort," or that Plaintiff engaged "in conduct 'for the sole purpose of inflicting intentional harm on [Defendants].'" *16 Casa*, 791 F.3d at 262 (quoting *Carvel*, 3 N.Y.3d at 190, 818 N.E.2d at 1103, 785 N.Y.S.2d at 362). While "New York courts have left open the possibility that a defendant who has harassed a plaintiff with meritless litigation may have utilized 'wrongful means,'" the Second Circuit has explained that litigation is only wrongful if it is "frivolous, objectively unreasonable, or patently meritless," or brought in subjective bad faith. *Id.* at 262–63 (citations omitted); *see also MZ Wallace*, 2018 WL 4007645, at *5. Moreover, acting pursuant to one's "normal economic self-interest" does not constitute wrongful means. *16 Casa*, 791 F.3d at 262.

The proposed First Amended Answer alleges that Plaintiff "acted with malice" and that its communications were "improper, inaccurate, dishonest, and intended to damage the relationship." FAA Counterclaims ¶¶ 74, 75. These allegations are sufficient at this preliminary stage. *See 534 E. 11th St. Hous. Dev. Fund Corp. v. Hendrick*, 90 A.D.3d 541, 542, 935 N.Y.S.2d 23, 25 (1st Dep't 2011) ("[P]re-discovery dismissal of pleadings [alleging tortious interference] is inappropriate where those pleadings suggest that [defendants] did not act in good faith.").

The Court agrees with Plaintiff that the proposed tortious interference claim is futile as to Hiles Two and the Lamp Stand. As for Old World Accents, Ms. Pyeatt, and Kris Kringl, Defendants are GRANTED leave to amend their Answer to include a proposed tortious interference claim.

3. *Affirmative Defenses and Other Minor Amendments*

Defendants originally proposed adding six affirmative defenses. *See* FAA Counterclaims ¶¶ 4–9. Plaintiff objected to five of them. Pl. Mem. 20. In response, Defendant withdrew those five affirmative defenses, leaving only one new affirmative defense (and a few changes to others). *See* Reply 9–10. Without objection, Defendants are GRANTED leave to amend their Answer to include the non-withdrawn affirmative defenses.

Defendants also propose several minor edits throughout the proposed First Amended Answer. Plaintiff does not object to those revisions. Accordingly, Defendants are GRANTED leave to amend their Answer to include the minor revisions reflected throughout the proposed First Amended Answer.

## CONCLUSION

For the foregoing reasons, Defendants' motion to amend is GRANTED in part and DENIED in part. Defendants may amend their Answer to include minor revisions as reflected in the proposed First Amended Answer, the affirmative defenses they have not withdrawn, a libel counterclaim, and a tortious interference claim as to customers Old World Accents, Amy Pyeatt, and Kris Kringl. Defendants' letter motion requesting that this Court consider Plaintiff's interrogatory responses is GRANTED in part and DENIED in part. The Clerk of the Court is respectfully requested to terminate docket entries 97 and 107.

**SO ORDERED.**

*[Signature: Mary Kay Vyskocil]*

**Date: March 7, 2023**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**